Filed 5/14/18 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREW CASTILLO et al., | B278239 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC505602) |
| v. | |
| GLENAIR, INC., | ORDER MODIFYING OPINION, DENYING REHEARING, AND DENYING REQUEST FOR JUDICIAL NOTICE |
| Defendant and Respondent. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 16, 2018, be modified as follows:

1. On page 1, the appearance for appellants is modified to read as follows:

Matern Law Group, Matthew J. Matern, Andrew Sokolowski, Tagore Subramaniam, Debra J. Tauger;

Altshuler Berzon, Stacey Leyton, Eve H. Cervantez and Rebecca C. Lee for Plaintiffs and Appellants.

2.  On page 2, first sentence of the last paragraph, which continues on page 3, an apostrophe is added to the name "Castillos" so the sentence reads:

> The Castillos' present claims against Glenair involve the same wage and hour claims, for the same work done, covering the same time period as the claims asserted in *Gomez*.

3.  On page 35, the following new subheading 7 and four paragraphs shall be added after part 6 of the Discussion, before the Disposition:

**7.    Petition for Rehearing**

Appellants filed a petition for rehearing, in which they make a number of arguments that mischaracterize our opinion or were never before made.  We briefly address some here.

First, appellants present an overbroad description and summary of *DKN Holdings*, *supra*, 61 Cal.4th 813.  As discussed above, *DKN Holdings* does not preclude our conclusion here.  Again, assuming Glenair and GCA are jointly and severally liable, we do not read *DKN Holdings* as creating an absolute bar against finding privity amongst parties who are also jointly and severally liable on a contract or as tortfeasors.  Moreover, unlike *DKN Holdings*, this case does not involve a joint obligation on a contract, nor does it involve joint tortfeasors.

2

Second, appellants make sweeping and inaccurate statements as to the scope of our opinion.  For example, appellants mistakenly claim our opinion would bar *Gomez* class members from bringing causes of action under "*entirely different* wage and hour statutes not raised in the *Gomez* complaint."  To the contrary, however, our opinion states Glenair is in privity with GCA for specified purposes only and does not purport to bar entirely new causes of action based on violations of different wage and hour statutes.  Similarly, appellants incorrectly state our opinion is "dangerously overbroad" because it creates privity "*whenever* two or more persons engage in joint wrongdoing."  Again, however, this greatly oversimplifies our opinion, which requires more than "joint wrongdoing" for a finding of privity.  Appellants also incorrectly claim our opinion would transform all service contracts into agency relationships.  Appellants overlook the requirement, which is satisfied here, that an agent represents the principal in dealings with third persons.  (Civ. Code, § 2295.)

Finally, appellants make new arguments in their petition for rehearing.  For example, appellants contend for the first time that their claims against Glenair are not the same as those asserted in *Gomez*, but instead "rest on entirely different facts concerning independently wrongful actions of Glenair and GCA."  Prior to their petition for rehearing, appellants had not disputed Glenair's repeated assertion that the claims at issue here were the same as the claims at issue in *Gomez*.  Our opinion is based in part on the claims here being the same as those released in

3

*Gomez.* We decline to address an entirely new theory of the case supported by new allegations on a petition for rehearing. (*Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761, 1777–1778, fn. 7.) Appellants also make a new due process argument. Specifically, appellants argue the named plaintiffs in *Gomez* could not have been constitutionally adequate representatives of appellants' claims against Glenair. Again, because appellants did not previously raise this argument, we decline to address it for the first time on a petition for rehearing. (*Ibid*.)

There is no change in the judgment.

On May 1, 2018, with newly added counsel, appellants Andrew and David Castillo filed a petition for rehearing and a request for judicial notice. At our request, Glenair filed an answer to the petition for rehearing and a response to the request for judicial notice. Subsequently, we granted appellants' request for leave to file a reply in support of their petition for rehearing. The petition for rehearing and the request for judicial notice are denied.

LUI, P. J.          CHAVEZ, J.          HOFFSTADT, J.

4

Filed 4/16/18 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDREW CASTILLO et al., | B278239 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC505602) |
| v. | |
| GLENAIR, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John Shepard Wiley, Jr., Judge.  Affirmed.

Matern Law Group, Matthew J. Matern, Tagore Subramaniam and Andrew Sokolowski, for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Jesse A. Cripps, Sarah Zenewicz and Elizabeth A. Dooley, for Defendant and Respondent.

_____

In a joint employer arrangement, can a class of workers bring a lawsuit against a staffing company, settle that lawsuit, and then bring identical claims against the company where they had been placed to work. We answer no.

This wage and hour putative class action involves the relationship between a temporary staffing company (GCA Services Group, Inc. (GCA)), its employees (appellants Andrew and David Castillo), and its client company (respondent Glenair, Inc.). The Castillos were employed and paid by GCA to perform work on site at Glenair. Glenair was authorized to and did record, review, and report the Castillos' time records to GCA so that the Castillos could be paid. The Castillos characterize GCA and Glenair as joint employers. As explained below, the undisputed facts of this case demonstrate both that Glenair and GCA are in privity with one another for purposes of the Castillos' wage and hour claims, and that Glenair is an agent of GCA with respect to GCA's payment of wages to its employees who performed services at Glenair.

These findings of privity and agency are significant. While this case was pending, a separate class action brought against, among others, GCA resulted in a final, court-approved settlement agreement. (*Gomez v. GCA Production Services, Inc.* (Super. Ct. San Bernardino County, 2014, No. CIVRS1205657 (*Gomez*).) The *Gomez* settlement agreement contains a broad release barring settlement class members from asserting wage and hour claims such as those alleged here against GCA and its agents. The Castillos are members of the *Gomez* settlement class and did not opt out of that settlement.

The Castillos present claims against Glenair involve the same wage and hour claims, for the same work done, covering the

same time period as the claims asserted in *Gomez*. Thus, because Glenair is in privity with GCA (a defendant in *Gomez*) and is an agent of GCA, the *Gomez* settlement bars the Castillos' claims against Glenair as a matter of law.

The Castillos appeal the trial court's grant of summary judgment. As discussed below, however, we conclude summary judgment was proper.

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Beginning on an unknown date and until sometime in 2011, the Castillos performed work for Glenair. The Castillos were placed at Glenair by GCA, a temporary staffing service that supplies workers to third party companies. Although the Castillos performed work for Glenair under Glenair's general oversight and direction, GCA hired, fired and paid the Castillos. GCA made payments to the Castillos based on time records provided by Glenair. Glenair collected and reviewed for accuracy the Castillos' time records for services they provided at Glenair. When Glenair no longer needed the Castillos' services, Glenair so advised GCA and the Castillos stopped performing work for Glenair.

### 1. The *Gomez* Settled Class Action

#### a. The Complaint

In July 2012, Judith Gomez and Ernesto Briseno filed the *Gomez* action, a putative class action against GCA, GCA Production Services, Inc., and GCA Services Group of Texas, L.P. The *Gomez* complaint alleged claims for unpaid minimum wages, unpaid overtime wages, meal and rest break violations, Labor Code sections 203 and 226 violations, and unfair business

3

practices under Business and Professions Code section 17200 et seq.  Glenair was not a named defendant in *Gomez*.

**b.      The *Gomez* Settlement Agreement and Release**

In May 2014, the *Gomez* parties settled the class action and executed a stipulation of class action settlement (settlement agreement).  The settlement agreement defined the settlement class as "[a]ll current and former hourly-paid, non-exempt persons employed in California by Defendants GCA Production Services, Inc., GCA Services Group, Inc., and GCA Services Group of Texas, L.P., at hourly wages during the Covered Period."  The covered period was defined as July 19, 2008 through May 5, 2014.  It is undisputed the Castillos were *Gomez* settlement class members and did not opt out of the settlement agreement.

The settlement agreement included a broad release which provided:  "in exchange for the Maximum Settlement Amount, Plaintiffs and the Settlement Class Members release the Released Parties from the Released Claims for the Covered Period.  With respect to the Released Claims, the Plaintiffs and Settlement Class Members stipulate and agree that, upon the Effective Date, the Plaintiffs and Settlement Class Members shall be deemed to have, and by operation of the final judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which Section provides:  [¶] A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.  [¶]

4

Plaintiffs and the Settlement Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the final judgment shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts."

The settlement agreement defined "Released Claims" as "all disputes, claims, and/or causes of action pleaded in the operative complaint for the Covered Period, namely: (a) failure to pay minimum wages, including Living Wage and Prevailing Wage rates; (b) failure to pay overtime wages; (c) failure to provide meal periods; (d) failure to provide rest periods; (e) breach of contract for failure to pay wages regarding (a) thru (d) above; (f) failure to timely pay all wages earned each pay period; (g) failure to timely pay final wages; (h) failure to reimburse business expenses; (i) failure to provide accurate itemized wage statements; and (j) all damages, penalties, interest and other amounts recoverable under said causes of action under California law, to the extent permissible, including but not limited to the California Labor Code, the applicable Wage Order, California Unfair Competition Law, and Private Attorneys General Act of 2004. The res judicata claim preclusion effect of

5

any judgment pursuant to this settlement shall be the same as the claim preclusion effect of the above Release."

And the settlement agreement defined "Released Parties" as "Defendants GCA Services Group, Inc., GCA Production Services, Inc. and GCA Services Group of Texas, LP, together with their parent company(ies), subsidiaries, if any, together with their respective current and former officers, directors, agents, attorneys, successors, and/or assigns, and Defendants' present and current employees who are not Class Members."

On December 1, 2014, the trial court in *Gomez* entered its order of final approval of the class action settlement. In its order, the court ruled "that class members who did not timely exclude themselves from the Settlement have released their claims against Defendant [GCA] and other released parties as set forth in the Settlement Agreement."

## 2. The Instant Action

### a. The Complaints

On April 11, 2013, less than a year after the *Gomez* complaint was filed and more than a year and a half before entry of the *Gomez* settlement agreement, counsel for the Castillos filed the instant putative class action against Glenair. Plaintiffs' counsel in this action was not class counsel in *Gomez*. At the time the original complaint was filed, however, the named plaintiff was in bankruptcy proceedings and, therefore, did not have standing to bring the lawsuit. The trial court granted leave to amend the complaint and, on February 14, 2014, counsel filed a first amended complaint naming Roxana Rojas as the new plaintiff. However, the court later granted defendants' demurrer to the first amended complaint because Rojas lacked standing as to all but one of the alleged causes of action (because her claims

6

were time-barred).  The court again granted leave to amend and, on September 12, 2014, counsel filed a second amended complaint adding the Castillos as plaintiffs.[1]  The parties then stipulated, and the court granted leave, to allow plaintiffs' counsel to file a third amended complaint.

The third amended complaint was filed on January 7, 2015 (one month after final approval of the *Gomez* settlement agreement) and is the operable complaint (complaint).  According to the complaint, the plaintiffs filed the lawsuit on behalf of themselves and all current and former non-exempt employees of Glenair (and Doe defendants 1 through 100) from April 11, 2009 through the conclusion of the lawsuit.  GCA was not named as a defendant in the complaint.

Paragraph nine of the complaint (paragraph nine) alleged the defendants were the "joint employers" of the plaintiffs and class members.  Paragraph nine also alleged Glenair and the Doe defendants "were the alter egos, divisions, affiliates, integrated enterprises, joint employers, subsidiaries, parents, principals, related entities, co-conspirators, authorized agents, partners, joint venturers, and/or guarantors, actual or ostensible, of each other."

The complaint alleged the following seven causes of action, all of which were the same "Released Claims" under the *Gomez* settlement agreement:  (i) failure to provide required meal periods, (ii) failure to provide required rest periods, (iii) failure to pay overtime wages, (iv) failure to pay minimum wage, (v) failure to pay all wages due to discharged and quitting employees,

---

[1] Rojas remained a named plaintiff, joining only in one cause of action against the defendants.  Rojas is not a party to this appeal.

7

(vi) failure to indemnify employees for necessary expenditures incurred in discharge of duties, and (vii) unfair and unlawful business practices. According to the complaint, the defendants engaged in a "systematic course of illegal payroll practices and policies." Among other relief, the complaint sought statutory penalties under Labor Code section 226 (section 226).

### b. Glenair's Motion for Summary Judgment

#### i. Initial Briefing

In April 2015, Glenair moved for summary judgment or summary adjudication. Glenair argued that, because the Castillos had settled and released their *Gomez* causes of action, res judicata barred the same causes of action asserted here. Glenair argued the Castillos, therefore, lacked standing to bring the class action. Glenair explained it was undisputed the claims asserted in *Gomez* were the same as those asserted by the Castillos here and the time period at issue here included that at issue in *Gomez*. According to Glenair, as "members of the *Gomez* class action lawsuit, which alleged the same Labor Code violations at issue in this lawsuit, for the same work, during the same time period, and which was fully and finally resolved" the Castillos could not pursue the instant class action. Glenair also argued the Castillos' section 226 claim for penalties was barred by the applicable statute of limitations.

In its moving papers, Glenair did not squarely address the issue of agency. In connection with its motion for summary judgment, Glenair submitted supporting documents, including the *Gomez* settlement agreement.

The Castillos opposed summary judgment, arguing they had not released their claims against Glenair. Specifically, the Castillos argued their claims against Glenair were valid because

8

Glenair was not a named party in *Gomez*, Glenair was not listed as a released party in the *Gomez* settlement agreement, and Glenair did not contribute to the *Gomez* settlement. The Castillos claimed, therefore, res judicata did not apply. Nonetheless, the Castillos urged that, even if res judicata applied, Glenair had failed to satisfy its burden on summary judgment to show each element of res judicata, including that it was either a party in *Gomez* or was in privity with a party in *Gomez*, or that the claims in each action were the same. The Castillos also asserted policy considerations weighed against application of res judicata. Finally, the Castillos argued they could amend, and should be granted leave to amend the complaint to add a valid cause of action for damages (as opposed to penalties) for violations of section 226. They stated a cause of action for actual damages under that section had a longer statute of limitations than their penalty claim and, therefore, would not be barred.

In opposing summary judgment, the Castillos did not dispute any of the material facts Glenair included in its separate statement of undisputed material facts. However, the Castillos recited additional facts, including some related to the relationship between Glenair and GCA and between Glenair and the Castillos. For example, the Castillos stated Glenair employees directed the services the Castillos performed for Glenair; Glenair collected the time of workers "placed by GCA at Glenair's facility;" "[a] lead employed by Glenair would review the time records of workers placed by GCA at Glenair's facility to ensure accuracy;" "leads employed by Glenair" oversaw and generally directed the tasks to be accomplished; GCA did not have a supervisor at the Glenair site; when Glenair no longer

9

needed or wanted the services of the Castillos, a Glenair "lead" advised GCA; and "[t]here is no shared ownership between GCA and Glenair." Glenair did not dispute those facts.

The Castillos also asserted the following facts in opposition to summary judgment, which Glenair disputed: David Castillo's Glenair supervisor did not accurately record David's actual work times, but instead recorded his scheduled work times; David Castillo's Glenair supervisor did not allow David to take his full required rest or meal breaks; David Castillo's Glenair supervisors manipulated his timesheets to show meal breaks he did not actually receive; and in order to take time off or to request overtime, David Castillo was required to seek permission from Glenair supervisors and not from anyone at GCA.

In response to the Castillos' arguments, Glenair claimed the Castillos had admitted Glenair was an agent of GCA and, therefore, a released party under the *Gomez* settlement agreement. Glenair pointed to evidence the Castillos submitted with their opposition to summary judgment indicating Glenair performed tasks on behalf of GCA. And, in contrast to the Castillos, Glenair argued policy considerations weighed in favor of applying res judicata here. Finally, Glenair urged it would be improper to allow the Castillos leave to amend to allege a new cause of action for damages under section 226.

### ii. First Hearing

Prior to the hearing on Glenair's motion for summary judgment, the trial court issued a tentative ruling granting summary judgment against the Castillos. In its tentative ruling, the court stated: "Glenair performed tasks on behalf of GCA, including collecting and reviewing employees' time records and transmitting the records to GCA for payment. . . . Glenair thus

10

acted as GCA's agent for the Castillos' employment. (Civ. Code § 2295 (" "Agent" defined. An agent is one who represents another, called the principal, in dealings with third persons.').)"

At the hearing, counsel for the Castillos argued Glenair was not an agent of GCA and disputed Glenair's claim that they had admitted an agency relationship. Instead, the Castillos claimed the two companies were joint employers: "we presented evidence showing that they . . . were joint employers or that even though the staffing agency [GCA] hired and fired and paid the workers that they placed workers at Glenair, Glenair controlled working conditions, set schedules and everything like that." Counsel argued "joint employment is not the same as agency." The trial court understood the Castillos' theory of the case was that Glenair and GCA were joint employers, and stated "[t]hey can't change their position on that."

In summarizing the Castillos' claims against Glenair, counsel stated: "These employees didn't get their meal periods. They didn't get their rest periods in accord with California law. They didn't get their final paycheck because their meal and their rest period premiums weren't paid. Their paychecks were not properly in accord with California law, because they didn't have the meal period premiums on them and so on and so forth. [¶] These are our claims. They're very simple claims."

Counsel for the Castillos also argued at the hearing that Glenair's motion for summary judgment was procedurally improper. Counsel claimed that, because Glenair not only failed to address the agency issue until its reply brief, but also in doing so relied on evidence the Castillos submitted in opposition to the motion, Glenair had failed to carry its burden on summary judgment.

11

Based on the Castillos' position that Glenair and GCA were joint employers, counsel for Glenair asserted for the first time at the hearing that paragraph nine doomed the Castillos' case. Specifically, Glenair argued that, through paragraph nine, the Castillos necessarily had admitted Glenair and GCA were agents of one another. Counsel explained paragraph nine alleged "that in connection with that joint employment relationship, . . . those joint employers are, quote, authorized agents of each other." Counsel for Glenair reasoned, therefore, that the "pleadings define Glenair as an authorized agent of the other joint employers. They've conceded that the only way Glenair is a proper defendant in this action is as a joint employer and, therefore, it must be an authorized agent by virtue of their pleadings for . . . in the context of defining who's an agent and whether or not that agency [was] to be specifically defined." The trial court noted Glenair's paragraph nine argument was "clever."

After hearing argument, the trial court ordered further briefing on the issue of agency. The trial court agreed that the Castillos (as opposed to Glenair) presented the evidence related to agency in their opposition papers. The court stated, "It is true that the material on agency came in in the opposition instead of in the moving papers. . . . And you're right; that is the burden of the moving party asking for summary judgment to have a complete package at the motion -- the moving paper stage." The court also noted the agency argument "was not debated in the briefs. In other words, [counsel for the Castillos] never weighed in on what is and what is not an agent because it came up in the reply. [¶] As I say, that could make me think that further briefing on this point is important because you have not had a written chance to advance case authority or legal logic to dispute

12

the agency argument."  The court determined "there needs to be some further briefing where the plaintiffs have a chance to say, this agency argument is completely wrong and should not be accepted."  Thus, the trial court ordered supplemental briefing on the issue of agency and set the matter for further hearing.

### iii.    Supplemental Briefing on Issue of Agency

A few months later, the parties submitted supplemental briefs on the issue of agency.  The Castillos filed their brief first and argued Glenair was not an agent of GCA because GCA did not exercise the requisite control over either Glenair or the workers GCA placed at Glenair.  The Castillos also argued there was no evidence GCA authorized Glenair to represent GCA in dealings with third persons.  In addition, the Castillos claimed none of the other elements of agency (such as intent) was present in the relationship between Glenair and GCA.  To support their position, the Castillos relied in part on an unreported California case and a case from a federal district court in South Carolina.  Finally, in a footnote, the Castillos dismissed Glenair's argument made at the first hearing that paragraph nine constituted an admission that Glenair and GCA were agents of one another.  The Castillos claimed the language of paragraph nine was merely boilerplate language that could not be relied upon for such an admission.

In its supplemental brief, filed after the Castillos filed their brief, Glenair reiterated its argument that, in paragraph nine, the Castillos admitted Glenair was an agent of GCA.  Beyond the pleadings, Glenair also argued the undisputed facts demonstrated it was the agent of GCA.  Glenair claimed it was undisputed that, by collecting and transmitting time records of GCA employees and dictating when they could take rest and

13

meal breaks, work overtime, and take time off, Glenair represented GCA in the specific area of wage and hour matters. Glenair also asserted policy considerations favored a finding that the *Gomez* release applied here.

### iv. Second Hearing and Order Granting Summary Judgment

The continued hearing on Glenair's motion for summary judgment was held September 21, 2016. Prior to the hearing, the trial court issued a new tentative ruling. The court again indicated it was granting summary judgment against the Castillos, stating it "stands by its analysis" in its first tentative ruling. In addition, the court addressed Glenair's paragraph nine argument, stating "Glenair noted the concession of agency in paragraph nine of the Third Amended Complaint. The court praised this argument . . . and called for further briefing. In this further briefing the plaintiffs answered this point only in a footnote, on logic this court rejects."

At the continued hearing, counsel for the Castillos reiterated their position that Glenair's motion for summary judgment was procedurally defective. Counsel argued the trial court should deny the motion because Glenair failed to include the issue of agency in either its notice of motion, motion, or separate statement of undisputed facts. Counsel also pointed out the court-ordered supplemental briefing did not help because Glenair filed the last brief (in which it claimed for the first time it was a limited or special agent of GCA) to which the Castillos could not respond. As a result, the Castillos asserted their due process rights were violated. The Castillos also claimed a factual dispute existed with respect to the alleged agency relationship between Glenair and GCA. The Castillos pointed out the record

14

did not include an agreement between Glenair and GCA, and further claimed Glenair collected time records of the GCA employees in order to protect itself against false claims by those employees. (The record does not indicate counsel for Glenair presented any argument on the issue of agency at the continued hearing.)

At the conclusion of the hearing, the trial court stated it was "going to stand by my tentative ruling."

### c.     Appeal

On October 12, 2016, before judgment was entered, the Castillos filed a notice of appeal from the trial court's September 21, 2016 order granting summary judgment.

### d.     Judgment

On April 12, 2017, the trial court entered judgment in favor of Glenair and against the Castillos on their complaint. Notice of entry of judgment was filed April 18, 2017.

## DISCUSSION

## 1.     Status of Appeal

Because the Castillos filed their notice of appeal before the trial court entered judgment on its order granting summary judgment, the notice of appeal was premature. Nonetheless, we have jurisdiction to consider the appeal because the trial court later filed a final judgment as to the Castillos. "The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(d)(2).)

15

## 2. Relevant Law and Standard of Review
### a. Summary Judgment and Standard of Review

" 'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' " (*Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1187 (*Borders Online*).) Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c) (section 437c).)

"There is a triable issue of material fact only if 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]. The party moving for summary judgment generally 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' " (*Borders Online*, *supra*, 129 Cal.App.4th at pp. 1187-1188.) " ' " 'A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact

16

exists as to that cause of action.' " ' " (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 575 (*Villacres*).)

"[W]e review the trial court's grant of summary judgment de novo, applying the same standards that governed the trial court.  [Citation.]  We consider all of the evidence the parties offered in connection with the motion, except that which the court properly excluded, and the uncontradicted inferences the evidence reasonably supports." (*Borders Online, supra,* 129 Cal.App.4th at p. 1188.)  " ' " 'We must determine whether the facts as shown by the parties give rise to a triable issue of *material* fact. . . .  In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed.'  . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . .  In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true." ' " (*Villacres, supra,* 189 Cal.App.4th at p. 575.)

### b.    Res Judicata

The doctrine of res judicata is applicable " 'if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the *same cause of action* as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding.' " (*Villacres, supra,* 189 Cal.App.4th at p. 577.)  "A court-approved settlement in a prior suit precludes subsequent litigation on the same cause of action.  Res judicata bars not only issues that were raised in the prior suit but related issues that could have been raised." (*Id.* at p. 569.)  " '[R]es judicata will not

17

be applied "if injustice would result or if the public interest requires that relitigation not be foreclosed." ' " (*Id*. at p. 577.)

For purposes of both res judicata (claim preclusion) and collateral estoppel (issue preclusion), the concept of "privity" has expanded with time. More than 75 years ago, our Supreme Court described the principle of privity: "Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. . . . A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (*Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811.) Over time, courts have embraced a somewhat broader, more practical concept of privity. " '[T]o maintain the stability of judgments, insure expeditious trials,' prevent vexatious litigation, and 'to serve the ends of justice,' courts are expanding the concept of privity beyond the classical definition to relationships ' "sufficiently close to afford application of the principle of preclusion." ' " (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 672 (*Cal Sierra*).) For example, more recently our Supreme Court explained the basic tenents of privity in broader terms: "As applied to questions of preclusion, privity requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit. [Citation.] A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's ' " 'virtual representative' " ' in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 826 (*DKN Holdings*).)

18

Thus, for purposes of privity, " '[t]he emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion.' " (*Alvarez v. May Dept. Stores Co.* (2006) 143 Cal.App.4th 1223, 1236-1237 (*Alvarez*).) Put another way, privity, " 'as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship *to the subject matter of the litigation.*' " (*Cal Sierra*, *supra*, 14 Cal.App.5th at p. 674.)

c.     **Agency**

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) "A representative is '[o]ne who stands for or acts on behalf of another.' (Black's Law Dict. (7th ed.1999) p. 1304, col. 2.)" (*Borders Online*, *supra*, 129 Cal.App.4th at p. 1189.) "An agency relationship 'may be implied based on conduct and circumstances.' " (*Ibid.*) An agent may be a general agent or a special agent. A special agent is "[a]n agent for a particular act or transaction . . . . All others are general agents." (Civ. Code, § 2297.)

"An agent . . . is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of those transactions." (2B Cal.Jur.3d (2015) Agency, § 1, p. 149.) " ' "The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties. [Citations.]" [Citation.] "The significant test of an agency relationship is the principal's right to control the

19

activities of the agent.  [Citations.]  It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." ' " (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 620.)

3. **Glenair is entitled to judgment as a matter of law because res judicata applies and bars the Castillos' claims against Glenair.**

We begin with the undisputed material facts.  The parties do not dispute the following:  (*i*) GCA is a staffing company that supplies employees, such as the Castillos, to the operations of third party companies, such as Glenair, (*ii*) the work the Castillos performed for Glenair was performed through GCA, (*iii*) Glenair employees generally directed and oversaw the services the Castillos performed for Glenair, (*iv*) there was no GCA supervisor on site at the Glenair facility during the relevant time, (*v*) Glenair collected the time for workers GCA placed at Glenair, (*vi*) to ensure accuracy, a Glenair employee reviewed the time records of workers GCA placed at Glenair, (*vii*) there is no shared ownership between Glenair and GCA, (*viii*) the Castillos were class members in *Gomez*, (*ix*) the Castillos did not opt out of the *Gomez* class settlement, (*x*) the Castillos' complaint here asserts the same causes of action as those asserted in *Gomez*, (*xi*) the court in *Gomez* granted final approval of the settlement in that case, and (*xii*) the *Gomez* settlement included a broad release that released GCA and its agents from the same wage and hour claims at issue here.

In addition to the above undisputed facts, the parties also agree the *Gomez* settlement acts as a final judgment on the

20

merits for purposes of res judicata.[2] (*Villacres*, *supra*, 189 Cal.App.4th at p. 569.) And it cannot be disputed that the Castillos' claims here relate to the work they performed at Glenair during the same time period at issue in *Gomez*.

Thus, two of the three elements of res judicata are met. The *Gomez* settlement was final and on the merits. And the causes of action here are the same as those at issue in *Gomez*.

The dispute then centers on the third and final element of res judicata, namely whether the undisputed material facts demonstrate Glenair was either a party or in privity with a party in *Gomez*. As discussed below, we conclude based on the undisputed facts that Glenair was both in privity with GCA (a party in *Gomez*) with respect to the subject matter of this litigation, as well as itself a released party in *Gomez*.

### a. Glenair is in privity with GCA with respect to the subject matter of the litigation.

Although the parties touched on the issue of privity in their briefs on appeal, we requested supplemental briefing to address the question whether Glenair and GCA were in privity with one another. (Gov. Code, § 68081.) While the Castillos argued no privity exists between the parties, Glenair argued the opposite. We agree with Glenair.

---

[2] On appeal, the Castillos discuss the doctrine of issue preclusion and argue the court in *Gomez* did not decide the identical issues raised here. Issue preclusion is not relevant, however, because we are concerned with res judicata, or claim preclusion. "It is important to distinguish these two types of preclusion because they have different requirements." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.)

As noted above, the concept of privity has expanded over the years and today involves a practical analysis.  (*Alvarez*, *supra*, 143 Cal.App.4th at p. 1236; *Cal Sierra*, *supra*, 14 Cal.App.5th at p. 672.)  In the recent *Cal Sierra* decision, the court relied on the principle that, rather than focusing on the relationship between the parties, privity " 'deals with a person's relationship *to the subject matter of the litigation*.' "  (*Cal Sierra*, at p. 674.)  In *Cal Sierra*, the plaintiff mining company (Cal Sierra) had previously received an arbitration decision partly in its favor and against another mining company (Western Aggregates) whose licensee had erected an asphalt plant in a problematic location on the land Cal Sierra and Western Aggregates shared.  (*Id.* at p. 668.)  After its partially successful arbitration against Western Aggregates, Cal Sierra filed a lawsuit against the licensee and its parent company based on the same facts and raising the same or similar causes of action as those raised in the arbitration.  (*Ibid.*)  The trial court held res judicata applied and entered judgment in favor of the licensee. (*Ibid.*)

The court of appeal affirmed.  (*Cal Sierra*, *supra*, 14 Cal.App.5th at p. 667.)  The court explained that, although Western Aggregates and its licensee were separate companies with a licensor-licensee relationship, that did not preclude a finding of privity for purposes of claim preclusion.  (*Id.* at p. 673.)  Rather, because the "subject matter of the litigation . . . was the same as that at the center of the arbitration dispute:  the placement of the asphalt plant and whether it infringed on Cal Sierra's mining rights," Western Aggregates and its licensee "had an identical interest" *as to that issue* and were "adversely and similarly impacted by the propriety (or impropriety) of the

22

plant's location." (*Id.* at p. 674.) Thus, because Western Aggregates and its licensee shared the same relationship to the subject matter of the arbitration and litigation, privity existed and res judicata applied. (*Ibid.*)

With this in mind, it is clear Glenair and GCA are in privity for present purposes. The subject matter of this litigation is the same as the subject matter of the *Gomez* litigation—namely, both cases involve the same wage and hour causes of action arising from the same work performed by the same GCA employees (the Castillos) at GCA's client company Glenair. Based on the undisputed facts, it is apparent Glenair and GCA share the same relationship to the Castillos' claims here. Both Glenair and GCA were involved in and responsible for payment of the Castillos' wages. Glenair was authorized by GCA and responsible for recording, reviewing and transmitting the Castillos' time records to GCA. GCA paid the Castillos based on those time records. And, by virtue of the *Gomez* settlement, the Castillos were compensated for any errors made in the payment of their wages. Thus, with respect to the Castillos' wage and hour causes of action, the interests of Glenair and GCA are so intertwined as to put Glenair and GCA in the same relationship to the litigation here. Accordingly, we conclude they are in privity for purposes of the instant litigation.

To be clear, however, our conclusion does not necessarily place Glenair and GCA in privity for all purposes. By way of example only, if the Castillos were to allege claims against Glenair based on injuries they sustained or discrimination they experienced while working at Glenair, it is by no means a foregone conclusion that GCA would be in privity with Glenair in that case. In such a case, it is not clear that Glenair and GCA

23

would share the same relationship to the subject matter of the litigation.  In contrast here, because the subject matter of the litigation directly implicates the interdependent and close relationship of Glenair and GCA with respect to payment of wages, they are in privity for present purposes.

Relying on *DKN Holdings*, *supra*, 61 Cal.4th 813, the Castillos contend that, "where parties were jointly and severally liable on an obligation, a judgment against one of such parties will not act as res judicata as to claims against the other party." The Castillos overstate the reasoning in *DKN Holdings*.  In *DKN Holdings*, our Supreme Court explained that "[j]oint and several liability *alone* does not create such a closely aligned interest between co-obligors." (*Id.* at p. 826, italics added.)  This case is distinguishable because, assuming Glenair and GCA are jointly and severally liable, our finding of privity does not rely on any such relationship.  Rather, as explained above, Glenair and GCA are in privity for present purposes based both on their interdependent relationship with respect to payment of the Castillos' wages as well as on the fact that this litigation revolves around alleged errors in the payment of the Castillos' wages. *DKN Holdings* does not preclude our conclusion here.

Similarly, *McCray-Key v. Sutter Health Sacramento Sierra Region* (E.D.Cal. 2015) 2015 WL 6703585, on which the Castillos rely, does not change our conclusion.  First, we are not bound by an unpublished district court order.  Second, although superficially similar, the facts of that case are distinguishable from those presented here.  For example, in *McCray-Key*, the first action was brought against a staffing company as a putative class action.  As part of the plaintiff's settlement of that first action, however, the class claims were dismissed and plaintiff's

24

individual claims were remanded to superior court.  (*Id.* at p. *1.)
There is no indication there was a final, court-approved class
action settlement defining a settlement class in *McCray-Key*.
And, in *McCray-Key*, although the settlement in the first case
included a restriction on future claims brought by the plaintiff,
that restriction was applicable only to the staffing company and
not, for example, to its agents.  (*Id.* at p. *4.)  Thus, unlike here,
there was no broad release of claims in *McCray-Key*.

Because Glenair and GCA are in privity for purposes of the
Castillos' claims here, the third and final element of res judicata
is satisfied.  Accordingly, the Castillos' claims against Glenair are
barred and summary judgment was proper.[3]

### b.     Glenair was an agent of GCA and, therefore, a released party.

In addition, we conclude the undisputed facts demonstrate
Glenair was an agent for GCA with respect to GCA's payment of
its employees, such as the Castillos.  We conclude a reasonable
trier of fact could not find otherwise.  Accordingly, Glenair was a
released party under the *Gomez* settlement agreement.  Thus, on
this ground as well, the third and final element of res judicata is
satisfied and summary judgment was proper.

Although the issue of agency is typically a question of fact,
when " 'the evidence is susceptible of but a single inference,' "
summary judgment is not precluded.  (*Borders Online*, *supra*,
129 Cal.App.4th at p. 1189, italics omitted.)  Here, the
undisputed evidence is susceptible of only one conclusion, namely

---

[3] Although the trial court did not directly address the issue
of privity, we may affirm its judgment if correct on any applicable
legal theory.  (*Le Bourgeois v. Fireplace Manufacturers, Inc.*
(1998) 68 Cal.App.4th 1049, 1057, fn. 10.)

that Glenair was an agent of GCA for the purpose of collecting, reviewing, and providing GCA's employee time records to GCA so that GCA could properly pay its employees.  The evidence is undisputed that GCA authorized Glenair to collect, review, and transmit GCA employee time records to GCA.  Thus, Glenair was authorized to represent, and did represent, GCA in its dealings with third parties, specifically GCA's payment of wages to its employees placed at Glenair.  (Civ. Code, § 2295; *Borders Online*, *supra*, at p. 1189; see also *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 788 [in concluding the plaintiff employee's claims must be arbitrated, court considered "alleged joint employers" staffing company and its client company "agents of each other in their dealings with" the plaintiff].)

The Castillos argue there can be no finding of agency because there is no evidence that GCA possessed the requisite control over Glenair.  We disagree. The undisputed evidence demonstrates GCA had the requisite control over Glenair.  It need not be shown that GCA generally controlled Glenair.  Rather, it must be shown that GCA had the right to control Glenair with respect to the specific agency at issue, namely Glenair's role in collecting, reviewing, and providing time records to GCA.  Indeed, " ' "[i]t is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." ' " (*Violette v. Shoup*, *supra*, 16 Cal.App.4th at p. 620.)

Here, GCA authorized Glenair to perform certain timekeeping-related tasks on behalf of GCA and the only reasonable inference is that GCA required Glenair to perform those tasks.  Had Glenair failed to perform those timekeeping tasks, GCA would not have been able to pay its employees.

26

Thus, because the undisputed facts demonstrate Glenair was an agent of GCA—specifically an agent with respect to GCA's payment of wages to its employees—Glenair was a released party under the *Gomez* settlement agreement. Accordingly, the Castillos' complaint against Glenair is barred and summary judgment was proper.

**4. Remaining Issues Related to the Finding of Agency**

**a. The "Golden Rule" of summary judgment did not preclude the trial court from considering the Castillos' evidence presented in opposition to Glenair's motion.**

The Castillos assert the trial court erred in considering any evidence, disputed or undisputed, that was not included in Glenair's separate statement of undisputed material facts. As support for their position, the Castillos rely in large part on this district's decision in *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327. There, the court cited the so-called "Golden Rule" of summary adjudication and summary judgment, which states "if it is not set forth in the separate statement, *it does not exists*." (*Id*. at p. 337.)

However, as other courts have held and Glenair correctly points out, the trial court is not absolutely prohibited from considering evidence that was not included in the moving party's separate statement, but was otherwise submitted with the parties' papers on summary judgment. In *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315–316 (*San Diego Watercrafts, Inc.*), the court held the trial court has discretion to consider evidence not included in the moving party's separate statement and to grant summary judgment despite an inadequate separate statement. (*Id*. at p. 315.) This

27

understanding comports with section 437c, the governing statute, which states that the failure of the moving party to comply with the separate statement requirement "may in the court's discretion constitute a sufficient ground for denying the motion." (§ 437c, subd. (b)(1); *San Diego Watercrafts, Inc.*, *supra*, at pp. 315–316.) Moreover, section 437c also provides summary judgment "shall be granted if all the papers submitted show that there is no triable issue," and the court "shall consider all of the evidence set forth in the papers" except that to which objections have been sustained. (§ 437c, subd. (c).) This unqualified reference to "all the papers" before the court, without limitation to documents submitted with the original motion, supports the conclusion that the trial court should consider all admissible evidence of which the opposing party has had notice and the opportunity to respond. (*Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1098.)

We agree with *San Diego Watercrafts, Inc.* and its progeny, including from this district, that "we may not mechanically conclude, as the 'Golden Rule' would have us do, that the court should never consider evidence not referenced in the separate statement. The statute is permissive, not mandatory . . . . Whether to consider evidence not referenced in the moving party's separate statement rests with the sound discretion of the trial court, and we review the decision to consider or not consider this evidence for an abuse of that discretion." (*San Diego Watercrafts, Inc.*, *supra*, 102 Cal.App.4th at pp. 315–316; *Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1478 (*Zimmerman*).) This is not a case where the party opposing summary judgment was blindsided by evidence not referenced in the moving party's separate

28

statement.  Indeed, it was the Castillos who referenced and included the facts they now argue the trial court should not have considered in granting summary judgment.  Presumably, the Castillos referenced those facts in an effort to demonstrate a disputed issue of material fact such that summary judgment was not proper.  However, as it turned out, those facts either were not material or did not demonstrate a dispute but rather supported the finding of agency and, therefore, summary judgment.  We conclude the trial court did not abuse its discretion in considering all the evidence the parties submitted in connection with their summary judgment papers.

Similarly, and despite the Castillos' claims to the contrary, the trial court properly considered all the evidence submitted by the parties in determining whether Glenair had met its initial burden of proof on its motion for summary judgment.  (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750-751.)

> **b.**      **The trial court afforded the Castillos ample opportunity to brief and address the issue of agency.**

The Castillos also argue summary judgment must be reversed because the trial court did not give them a sufficient opportunity to address the issue of agency and, therefore, their due process rights were violated.  We disagree.

As the Castillos explain, the issue of agency did not come into focus until after they filed their opposition to Glenair's motion for summary judgment.  Glenair first addressed the issue of agency in its reply brief.  At the first hearing on Glenair's motion for summary judgment, however, the trial court recognized the Castillos had not had a sufficient opportunity to address the agency issue.  The court acknowledged the agency

29

argument "was not debated in the briefs. In other words, [counsel for the Castillos] never weighed in on what is and what is not an agent because it came up in the reply. [¶] As I say, that could make me think that further briefing on this point is important because you have not had a written chance to advance case authority or legal logic to dispute the agency argument." Thus, the trial court ordered further briefing specifically on the issue of agency and set the matter for a second hearing. Other than limiting the supplemental briefing to the issue of agency, the court did not limit the scope of the parties' briefing on agency.

The Castillos now take issue with the fact that Glenair argued in its court-ordered supplemental brief that it was a "special agent" of GCA. Although Glenair did not use the term "special agent" when it first addressed the issue of agency in its reply brief on summary judgment, but only later used that term in its supplemental brief, we conclude this is a distinction without a difference. The trial court requested that the parties brief the issue of agency. The court did not limit the parties to addressing "general agency" only. In addition, the core elements of a special agency are the same as those for a general agency, namely the agent, whether special or general, represents the principal in dealings with third parties and the principal exercises control over the agent. We conclude the trial court's directive to file further briefs on the issue of "agency" allowed the parties to address either or both general and special agency and the Castillos' due process rights were not violated.

### c. Glenair's argument based on paragraph nine of the complaint is not persuasive.

As noted above, we review the trial court's decision to grant summary judgment de novo. "This means ' "we are not bound by

30

the trial court's stated reasons or rationales." ' [Citation.] In other words, '[t]he trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale.' [Citation.] Indeed, in our review, 'we are not concerned with the findings actually made by the trial court in support of its ruling.' " (*Zimmerman, supra*, 131 Cal.App.4th at p. 1485.) Below Glenair argued, and the trial court seemed to agree, that paragraph nine constituted a judicial admission that Glenair was an agent of GCA. Although Glenair presses this same argument on appeal, we are not persuaded.

As noted above, paragraph nine included boilerplate language citing a laundry list of legal relationships, some or all of which are alleged to exist between Glenair and the Doe defendants. In order to make its argument work, Glenair must convince us of two leaps of faith. First, we must agree GCA— which is not a named defendant—is a Doe defendant in this case. Second, we must agree paragraph nine necessarily admits Glenair is an agent of GCA. Assuming we make the first leap of faith and agree GCA is a defendant, we cannot make the second leap. Paragraph nine states all the defendants were, among other things, "the alter egos, . . . joint employers, . . . authorized agents, . . . and/or guarantors, actual or ostensible, of each other." Glenair overlooks a crucial component of paragraph nine, namely the words "and/or." Because of those two words, and assuming boilerplate language in a complaint is meaningful (a position on which the parties disagree), paragraph nine cannot be read to admit Glenair is necessarily an agent of any other defendant. At most, paragraph nine can be read to admit Glenair shares any one of the many listed legal relationships with the other

31

defendants.  Accordingly, summary judgment is not proper on the basis of Glenair's paragraph nine argument.

### d.    *Serrano v. Aerotek, Inc.*

Following oral argument, counsel for the Castillos filed a notice of new authority advising the court that the First District recently ordered published its opinion in *Serrano v. Aerotek, Inc.* (Mar. 9, 2018, No. A149187) __ Cal.App.5th __ [2018 WL 1452237] (*Serrano*).  Although the Castillos assert *Serrano* bears on the issues of both agency and privity, *Serrano* addresses agency only.

The plaintiff in *Serrano* brought a putative class action against both a temporary staffing company (Aerotek, Inc.) and its client Bay Bread.  (*Serrano*, 2018 WL 1452237, at p. *3.)  Aerotek had placed the plaintiff at Bay Bread to perform services there.  (*Ibid.*)  The plaintiff alleged Aerotek and Bay Bread failed to provide required meal breaks.  (*Ibid.*)  The facts demonstrated that Aerotek trained the employees it placed at Bay Bread, like the plaintiff, on Aerotek's employment policies, including its meal break policies.  (*Id.* at p. *1.)  Aerotek also employed an on-site manager at Bay Bread who reviewed time records of the temporary employees placed there and sent those records to Aerotek for payroll processing.  (*Id.* at p. *2.)  The on-site manager was not responsible, however, for reviewing temporary employee meal breaks.  (*Ibid.*)  The facts also revealed the plaintiff did not believe Aerotek affirmatively prevented her from taking proper meal breaks, but she believed Aerotek may have failed to ensure Bay Bread implemented appropriate meal break policies.  (*Id.* at p. *3.)

The Court of Appeal affirmed summary judgment in Aerotek's favor.  (*Serrano*, 2018 WL 1452237, at p. *1.)  First, the

court held Aerotek satisfied its own obligation to provide meal breaks. (*Id.* at pp. *4–*5.) Next, the court rejected the argument that, as a joint employer with Bay Bread, Aerotek was vicariously liable for Bay Bread's alleged meal break violations. (*Id.* at pp. *5–*6.) Relying on this district's decision in *Noe v. Superior Court* (2015) 237 Cal.App.4th 316,[4] the *Serrano* court stated, "whether an employer is liable for a co-employer's violations depends on the scope of the employer's own duty under the relevant statutes, not 'principles of agency or joint and several liability.' " (*Serrano*, at p. *6.)

Although similar in some respects, we conclude *Serrano* is procedurally, factually and legally distinct from the instant case. Unlike here, the plaintiff in *Serrano* sued both the staffing company and client company together in the same lawsuit. And again in contrast to the instant case, *Serrano* did not involve a pre-existing final judgment releasing the same claims alleged in the *Serrano* complaint. In addition, unlike GCA here, Aerotek did not authorize its client company to represent Aerotek with respect to its employment policies. Rather Aerotek not only provided training on its employment policies but also employed an on-site manager who was responsible for time records. Moreover, it does not appear that the parties in *Serrano* raised the same arguments at issue here; and likewise the parties here did not raise many of the arguments made in *Serrano*. Thus, *Serrano* does not affect our decision here.

---

[4] *Noe v. Superior Court* addressed Labor Code section 226.8, which is not at issue in this appeal.

### 5.    Public policy favors the application of res judicata here.

Policy considerations are relevant to the res judicata analysis.  "Even if [the] threshold requirements are established, res judicata will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 (*Citizens for Open Access*).)  Despite the Castillos' arguments to the contrary, we conclude the public interest favors the application of res judicata here.

As Glenair points out, if the Castillos were permitted to pursue their causes of action here, they would undermine the finality of the bargained-for and court-approved *Gomez* settlement, waste judicial resources, and potentially obtain a double recovery on their already-settled claims.  In addition, Glenair indicates that, if the Castillos were successful on their underlying claims, Glenair could seek indemnification from GCA, thus reopening the same wage and hour claims GCA settled in *Gomez*.  Although the Castillos correctly note the *Gomez* settlement did not award the plaintiffs there (including the Castillos) the full value of their claims and the court here could offset any potential double recovery in this case, their position overlooks the significance of the *Gomez* parties' bargained-for finality of the settlement agreement.  Thus, in our view, "two fundamental policy considerations—promotion of judicial economy and protection of litigants from unnecessary litigation—are furthered by imposing res judicata as a bar to [the Castillos'] present action." (*Citizens for Open Access*, *supra*, 60 Cal.App.4th at p. 1075.)

**6.** **Leave to Amend**

Finally, the Castillos argue the trial court erred when it refused to grant their request for leave to amend the complaint. Although the Castillos concede the applicable statute of limitations bars their requested section 226 penalties, they contend they have a valid section 226 claim for actual damages and should have been permitted to amend the complaint to add that damages claim. However, because we conclude the Castillos' alleged causes of action are barred as a result of the *Gomez* settlement, we need not and do not reach this issue related to the relief the Castillos seek on their causes of action.

**DISPOSITION**

The judgment is affirmed.  Glenair, Inc. is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.