Filed 5/13/22  P. v. Nieto CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE NIETO,<br><br>    Defendant and Appellant. | H047795<br>(Santa Cruz County<br>Super. Ct. No. 17CR05988) |

A jury found defendant Jose Nieto guilty of two counts of committing a lewd or lascivious act on a child under age 14 (Pen. Code, § 288, subd. (a)[1]).  Nieto had committed the crimes against two children, and the jury found true a multiple-victim sentence enhancement allegation under section 667.61.  The trial court sentenced Nieto to two, consecutive 25-years-to-life terms.

On appeal, Nieto claims the trial court erred by instructing the jurors with CALCRIM No. 1191B concerning a propensity inference based on the charged sex offenses and by overruling his hearsay objection to certain testimony from one of the victims.  Regarding his sentence, Nieto contends the 25-years-to-life terms were unauthorized because the charging document did not plead the sentence enhancement

---

[1] Unspecified statutory references are to the Penal Code.

under the relevant provision, section 667.61, subdivision (j)(2). He further asserts that his sentence constituted cruel and unusual punishment.

For the reasons explained below, we affirm Nieto's convictions but vacate his sentence and remand the matter for resentencing.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Procedural History*

On August 7, 2018, the Santa Cruz County District Attorney filed a first amended information (hereafter information) charging Nieto with two sex crimes involving two "Jane Doe" minors.[2] Count 1 alleged a lewd or lascivious act on a child under age 14 committed against Jane Doe 1 on or about or between September 1, 2016, and September 6, 2017 (§ 288, subd. (a); count 1). Count 2 alleged a lewd or lascivious act on a child under age 14 committed against Jane Doe 2 on or about or between September 1, 2016, and September 6, 2017 (§ 288, subd. (a); count 2). The information also alleged that, "within the meaning of Penal Code section 667.61[, subdivisions] (b) and (e), as to counts 1 and 2, that the following circumstances apply: multiple victims" (some capitalization omitted) (hereafter multiple-victim enhancement).

In December 2019, a jury found Nieto guilty as charged on both counts and found true the multiple-victim enhancement allegation under "Penal Code Section 667.61."

In January 2020, the trial court sentenced Nieto to 50 years to life in prison, consisting of a term of 25 years to life on count, 1 consecutive to 25 years to life on count 2. Nieto timely appealed.

---

[2] The information referred to the minor victims as "Jane Doe 1" and "Jane Doe 2." We refer to them as "Jane Doe 1" or "Doe 1" and "Jane Doe 2" or "Doe 2." (See Cal. Rules of Court, rule 8.90(b)(4).)

B. *Evidence Presented at Trial*

    1.  Prosecution Evidence

Jane Doe 1 and Jane Doe 2 are sisters. In September 2017,[3] Doe 1 and Doe 2 (the sisters) lived in a two-bedroom apartment with their parents, Dorotea and Isaac, and a younger sister. At that time, Doe 1 was eight years old and in the third grade, and Doe 2 was seven years old and in the second grade.[4] The Doe family occupied one of the two bedrooms in their apartment. Nieto and a man named Benito occupied the other bedroom. By September 2017, Nieto had been living with the Doe family for about a year and a half.

Dorotea and Isaac worked as farm laborers. A neighbor, Rosa Rodriguez, minded Doe 1 and Doe 2 several days a week, in the morning before school and in the afternoon after school. Rosa's daughter, Karina, worked for the local school district and visited her mother daily. Nieto usually left for work at 5:30 a.m., returned to the apartment between 5:00 and 6:00 p.m., and went out again until later at night.

Doe 2 (the younger sister) testified that Nieto touched her "private part" twice when she was in second grade. Nieto first touched Doe 2 when she was near a hallway closet that contained toys. On this occasion, Doe 2 and Doe 1 were playing by the closet, and Nieto touched both of them on their private parts. Nieto touched Doe 2 with his hand under her clothing. Nieto asked Doe 2 if she wanted candy and gave her a gummy worm. Doe 2 felt sad and told Doe 1 about the touching.

Doe 2 testified further that Nieto touched her another time while she and her sister were sleeping in their living room one night. Doe 2 said she did not wake up and did not remember Nieto touching her in the living room, but her mom witnessed this incident and told Doe 2 about it. Doe 2 also testified that she did not remember when she had talked

---

[3] Unless otherwise indicated, all dates were in 2017.
[4] By the time of Nieto's trial, Jane Doe 1 was 10 years old, and Jane Doe 2 was nine years old.

to her mom about this touching and answered "No" when asked by the prosecutor, "Did your mom ever tell you that touching happened?"

Doe 2 recounted that Nieto gave her money, candy, and fireworks. Nieto told Doe 2 not to tell her mom about the money. Doe 2 nonetheless told her mom that Nieto was giving her money, and her mom said not to take it.

Doe 1 (the older sister) testified that Nieto once touched her "[c]lose to . . . [her] private part." Nieto touched Doe 1 with his hand over her clothes—below her belly button and above her private part—while she was in the kitchen early one morning. Doe 1 felt badly about having failed to yell when the touching happened and was nervous that her mom would scold her for not having done so.

Another time, Nieto touched Doe 1 on her back side with his hand when they were outside the apartment. Additionally, once, when Doe 1 was playing with Doe 2 near the hallway closet, Nieto came near and tickled them. He tickled Doe 1 on her ribs and Doe 2 on her belly. Doe 1 testified that she did not remember being touched on her private part in the hallway or seeing Nieto touch Doe 2.

Doe 1 recounted that Nieto once gave her and her friends some money when they were playing outside. Another time, Nieto gave Doe 1 nine dollars. Doe 1's mom told her not to accept money from Nieto. Nieto also gave candy to Doe 1 once when she was outside with friends. Additionally, Nieto left some glue for her on the microwave in their apartment.

Doe 2 and Doe 1 testified that they had talked to each other and to their mom Dorotea about Nieto before they eventually told their neighbor Rosa and Karina about what was happening. When Doe 2 told her mom about Nieto touching her private parts, Dorotea said "don't tell anyone." When Doe 1 told her mom that Nieto had touched her, Dorotea said Doe 1 had to tell the truth and Dorotea would not believe her if she lied.

Dorotea testified that Nieto sometimes talked to Doe 1 and Doe 2, but she never saw him touch them or give them money. About three or four times, however, Dorotea

4

saw Doe 1 and Doe 2 each with a dollar that Nieto had provided. Dorotea testified further that before September 6, Doe 1 and Doe 2 had told her they did not want to be around Nieto anymore because Nieto's presence in the apartment made Doe 2 nervous. Additionally, one or two days before Dorotea spoke to Rosa and Karina about the molestation (on September 6), Doe 1 had told Dorotea that Nieto touched her in her "woman's part."[5] Dorotea asked Doe 1 if she was telling the truth. Doe 1 said she was, and Dorotea believed her. Doe 1 was sad, shy, and scared when she recounted what had happened. Dorotea testified that her family was afraid to go to the police and concerned about immigration.

Karina testified that on September 6, her mother Rosa had informed her that Doe 1 and Doe 2 wanted to talk. The sisters looked nervous and scared. Doe 2 told Karina that Nieto had touched her and Doe 1. When Karina asked Doe 2 where she had been touched, Doe 2 pointed at her vagina. Doe 1, likewise, stated that Nieto had touched her and pointed to her vagina.[6] Doe 2 said Nieto had "give[n] them money but they couldn't say anything to their mom." Karina told the sisters that she was going to report what they had told her. Doe 2 smiled at her older sister Doe 1 and said, "you see she's going to help us." The sisters told Karina that they had talked to their mom about the situation, but they were scared because Nieto had said that he would call immigration and have them deported. Doe 2 testified that she told Karina and Rosa about Nieto because she did not like the touching and wanted it to stop.

Later on September 6, when Dorotea arrived to pick up Doe 1 and Doe 2, Karina told Dorotea that she (Karina) was required to report what the sisters had recounted.

---

[5] The trial court admonished the jury that Dorotea's testimony about what Doe 1 had said to her was "being admitted not for its truth but to show that a complaint was made."

[6] As with Dorotea's testimony about Doe 1's disclosure, Karina's testimony about what the sisters had said to her was "not offered for the truth, but to show that a complaint of sexual molestation ha[d] been made."

5

Karina then contacted the police. In addition, Dorotea and her husband Isaac spoke to Nieto.

On September 18, Watsonville Police Officer Naim Figueroa separately interviewed Doe 1 and Doe 2.[7] Doe 1 described to Officer Figueroa two touching incidents—in the kitchen and the living room—that had occurred in a timeframe between second and third grade. Doe 1 pointed out on a diagram for Officer Figueroa where Nieto had touched her. Doe 2 similarly marked a diagram during her interview indicating the location of her private part.

Officer Figueroa also interviewed Nieto on September 14 and again on September 19 or 20. In addition, during a September 18 pretext call between Isaac and Nieto, Isaac confronted Nieto about the sisters' reports of molestation. During Figueroa's interview of Nieto, Nieto said that he had not dated any women since 1999 due to the risk of sexually transmitted diseases, he had given the sisters money in front of their parents, and Doe 1 and Doe 2 were liars. During the pretext call, Nieto said to Isaac that his daughters were not lying.

### 2. Defense Evidence

Nieto called multiple relatives to testify, including his brother, sisters, and nieces. The defense witnesses had never seen Nieto touch any children inappropriately or act in a sexually inappropriate manner and described Nieto as honest, peaceful, and respectful. In addition, defense witnesses testified that Nieto gave his nieces and nephews "domingo"—which is a small amount of money given on Sunday in accordance with a cultural tradition—but the witnesses never knew Nieto to ask for anything in return from his nieces and nephews.

---

[7] The prosecutor presented video recordings of the interviews to the jury during Officer Figueroa's testimony. Unadmitted transcriptions of the interviews are included in the clerk's transcript.

Nieto testified in his own defense. In 2017, he usually worked Monday through Saturday, picking berries in the fields. He would leave for work at about 5:30 a.m. and return home around 6:00 p.m. On Sundays, he usually spent time with his relatives in Santa Cruz. He also has a son in Modesto who is around 18 or 20 years old. Nieto separated from his son's mother around 1999 and had not had a sexual relationship with any woman since then because he did not want one.

Nieto began living with the Doe family in 2015. Nieto did not have any issues with Isaac or Dorotea up until the time the sisters complained about the molestation. He also did not spend much time with the Doe family. Nieto sometimes gave the sisters candy or a dollar or two of "domingo." He never requested anything in return. After Isaac had asked Nieto not to give the sisters money, Nieto stopped doing so. He denied buying glue for the sisters.

Nieto said he was never alone with Doe 1 and Doe 2. He denied touching the sisters when they were playing near the hallway closet. He said he had once tickled Doe 1 on the ribs. He denied that he had ever inappropriately touched Doe 1 or Doe 2. He said he is not a child molester and the sisters had lied about the molestation.

## II. DISCUSSION

Nieto raises four claims in this appeal. He contends the trial court erred by instructing the jurors with CALCRIM No. 1191B (CALCRIM 1191B) concerning a permissive propensity inference based on evidence of the charged sex offenses. Nieto further claims the trial court erred by overruling his hearsay objection and motion to strike Jane Doe 2's testimony about Nieto touching her in the living room. As to his sentence, Nieto contends the trial court was precluded from imposing 25-years-to-life terms because the charging document did not plead the applicability of the sentence enhancement under section 667.61, subdivision (j)(2). He also asserts that his sentence constituted cruel and unusual punishment.

We address Nieto's claims in turn.

7

A. *CALCRIM 1191B*

At trial, without objection from Nieto, the trial court instructed the jury using CALCRIM 1191B as follows: "The People presented evidence that the defendant committed the crime of lewd acts on a child as charged in Counts 1 and 2. [¶] If the People prove beyond a reasonable doubt that the defendant committed one of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offense charged in this case. [¶] If you find that the defendant committed one of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge and allegation beyond a reasonable doubt."

On appeal, Nieto claims the trial court erred under the circumstances of this case by instructing the jury with CALCRIM 1191B. Nieto acknowledges that in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*), our Supreme Court approved an instruction similar to that given to his jury and recognizes that we are bound to follow that precedent. Nevertheless, Nieto argues that *Villatoro* "was wrongly decided for the reasons explained by the three dissenting justices in that case," and states that he raises his current claim "to facilitate the high court's reconsideration" of its conclusions in *Villatoro*. In addition, Nieto asserts that *Villatoro* is factually distinguishable and "the instant case would have militated against allowing the jury to draw the propensity inference in this instance." He also claims that instructing the jury with CALCRIM 1191B prejudicially violated his due process right to a fair trial in which every element of the charged crimes must be found proven beyond a reasonable doubt.

The Attorney General asserts that Nieto forfeited his claim of instructional error by failing to object at trial and, further, we should reject Nieto's assertion that his claim is nonetheless cognizable because the instruction affected his substantial rights. (See

8

§ 1259.)  Additionally, the Attorney General maintains that Nieto's claim fails under *Villatoro* and, regardless, any error in giving the instruction was harmless.

### 1. Legal Principles

"A trial court in a criminal case is required to give correct jury instructions on the general principles of law relevant to issues raised by the evidence.  [Citation.]  We review jury instructions under the de novo standard."  (*People v. Cruz* (2016) 2 Cal.App.5th 1178, 1183.)  "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' "  (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)  "We consider the challenged instruction in the context of the instructions and record as a whole to ascertain whether there is a reasonable likelihood the jury impermissibly applied the instruction."  (*People v. Rivera* (2019) 7 Cal.5th 306, 329.)

"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion."  (*Villatoro*, *supra*, 54 Cal.4th at p. 1159; see Evid. Code, § 1101, subd. (a).)  In *Villatoro*, our Supreme Court nevertheless concluded that Evidence Code section 1108 permits a jury to consider a defendant's charged sexual offenses (in addition to uncharged sex offenses) as propensity evidence.[8]  (See *Villatoro*, at p. 1164.)  Moreover, the court upheld the use of a jury instruction regarding the

---

[8] Evidence Code section 1108, subdivision (a), provides:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [s]ection 1101, if the evidence is not inadmissible pursuant to [s]ection 352."  (Evid. Code, § 1108, subd. (a).)  In turn, Evidence Code section 352 states:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)

9

consideration of such propensity evidence (i.e., a modified version of then CALCRIM No. 1191) similar to current CALCRIM 1191B. (*Id*. at pp. 1167–1169.)

### 2. Analysis

Regarding the threshold issue of forfeiture, we will consider the merits of Nieto's claim despite his failure to object at trial because he contends the challenged instruction affected his "substantial rights" under section 1259. (See *People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249; see also *People v. Townsel* (2016) 63 Cal.4th 25, 59–60; *People v. Mitchell* (2008) 164 Cal.App.4th 442, 465.)

Turning to Nieto's contention that his due process rights were violated by the inclusion of the phrase " 'and did commit' " in CALCRIM 1191B, we decide that Nieto's constitutional claim of error is squarely foreclosed in this court by the holding in *Villatoro*. There, our Supreme Court considered an instruction that included the same phrase and concluded "the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof."[9] (*Villatoro*, *supra*, 54 Cal.4th at p. 1168; see also *id*. at p. 1165.) The court also explained that the challenged instruction did not "otherwise interfere with defendant's presumption of innocence." (*Id*. at p. 1168.)

---

[9] The instruction in *Villatoro* read in pertinent part: " 'If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to *and did commit the other offenses of rape and sodomy charged*. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.' " (*Villatoro*, *supra*, 54 Cal.4th at p. 1167, italics added.)

We are bound to follow our Supreme Court's decision in *Villatoro* and thus reject Nieto's analogous constitutional challenge to CALCRIM 1191B.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see also *People v. Meneses* (2019) 41 Cal.App.5th 63, 68 [finding *Villatoro* dispositive of defendant's due process challenge to CALCRIM 1191B].)

Additionally, we are not persuaded by Nieto's further argument that *Villatoro* is otherwise factually distinguishable from the present case and the trial court erred under the circumstances here.  Nieto asserts that the record "leaves an open question" as to whether the trial court—as required by *Villatoro*—weighed the probative value of the propensity inference against its potential prejudice in this factual context.  He argues further that, because the sisters together discussed the molestation, "[t]he probative value (or, perhaps more accurately, the reliability) of any propensity inference was decreased, and the prejudicial effect/impropriety heightened, by the absence of any independent source of evidence for either of the offenses."  He contrasts this circumstance against that in *Villatoro* where the five victims did not know each other (*Villatoro*, *supra*, 54 Cal.4th at p. 1158) and, according to Nieto, had "very little to no possibility of" influencing each other.

In *Villatoro*, the defendant argued that the trial court erred in giving the propensity instruction because it did not undertake an Evidence Code section 352 analysis before instructing the jury on the propensity inference.  (See *Villatoro*, *supra*, 54 Cal.4th at p. 1168.)  Our Supreme Court rejected the defendant's argument for two reasons.  First, the court "agree[d] with the Court of Appeal that the trial court implicitly conducted a[n] [Evidence Code] section 352 analysis."  (*Ibid*.)  Second, the court concluded that "any error in failing to conduct such an analysis was harmless" (*ibid*.) because, despite minor differences, the victims' accounts of their respective attacks "were strikingly similar in various respects" (*ibid*.) and "highly probative of defendant's propensity to commit such crimes, and its value substantially outweighed any prejudice."  (*Id*. at p. 1169.)

11

Ultimately, our high court concluded that "under the facts of this case, the trial court did not err in giving the modified instruction" and stated that "[w]e do not decide, however, whether courts should give such an instruction in the future." (*Ibid.* )

Because the record in the present case does not expressly demonstrate that the trial court conducted an Evidence Code section 352 analysis before instructing with CALCRIM 1191B, we will assume for the sake of argument that such analysis was not conducted and decide whether the trial court's "fail[ure] to conduct such an analysis was harmless." (See *Villatoro*, *supra*, 54 Cal.4th at p. 1168.) As in *Villatoro*, the evidence here regarding the charged crimes was highly probative of propensity because the sisters described materially similar conduct perpetrated by Nieto against them in the same timeframe. (See *id*. at pp. 1168–1169; see also *People v. Falsetta* (1999) 21 Cal.4th 903, 917 ["[T]he probative value of 'other crimes' evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity in time of the offenses, and the independent sources of evidence (the victims) in each offense."].) Further, there is no requirement that propensity evidence come from victims who are unrelated strangers unaware of each other or of the conduct the defendant allegedly committed against the other victim. (See *People v. Hernandez* (2011) 200 Cal.App.4th 953, 956, 966–967; *People v. Frazier* (2001) 89 Cal.App.4th 30, 33, 40–41; *People v. Soto* (1998) 64 Cal.App.4th 966, 991–992.) Nieto does not point to any evidence that directly suggests the sisters colluded or were otherwise influenced by each other to provide a consistent account of Nieto's actions. That Doe 1 and Doe 2 are sisters living in the same household and had discussed what Nieto was doing to them does not make it reasonably probable that, had the trial court explicitly weighed the probative value of the evidence as related to propensity against its potential prejudicial effect, the trial court would have significantly discounted the evidence's probative value.

Moreover, as to the question of prejudice, the testimony of each sister was no more inflammatory than that of the other. Thus, this circumstance is not one in which

consideration of the evidence regarding one sister or the other would " ' "tend[] to evoke an emotional bias against a party as an individual" ' [citation] or . . . cause the jury to ' " 'prejudg[e]' a person or cause on the basis of extraneous factors." ' " (*People v. Cowan* (2010) 50 Cal.4th 401, 475.)  For these reasons, we conclude that any trial court error in failing to conduct an Evidence Code section 352 analysis here before instructing the jury with CALCRIM 1191B was harmless, in that it is reasonably probable the trial court would have decided that the probative value of the propensity evidence was not substantially outweighed by its prejudicial effect.

In sum, we reject Nieto's claim of instructional error because it is, in part, squarely foreclosed by *Villatoro* and otherwise lacks merit under the circumstances of this case.

B.  *Challenge to Alleged Hearsay Evidence*

Nieto contends the trial court erred by overruling a defense hearsay objection and motion to strike Jane Doe 2's testimony about Nieto touching her while she was asleep in the living room.

The Attorney General responds that Nieto's claim of error is forfeited by his failure to object to the only arguable hearsay testimony by Doe 2 and, regardless, any error was harmless.

1.  Background

After Doe 2 testified about having been touched when playing near the hallway closet and further stated that she could not remember the "next time" Nieto had touched her, the prosecutor asked, "Do you ever remember a time [Nieto] touched you in the living room?"  Doe 2 said that she did and then explained, without defense objection, that Nieto touched her "when [she] was sleeping" "[a]t night" in the living room while accompanied by her older sister.  The prosecutor asked Doe 2 if she had awoken at some point, and Doe 2 said "No."  Doe 2's direct testimony then proceeded as follows:

"Q.  How did you know [Nieto] was touching you?

"A.  *Because my mom saw and my mom told me*.

13

"Q.  And -- but do you remember him touching you in the living room?

"A.  No.

"Q.  Do you remember seeing Jane Doe 2 [*sic*] being touched in the living room?

"A.  Yes.

"Q.  When you talked to your mom about the living room, when was that?

"A.  I don't remember.

"Q.  And I just want to clarify, do you remember him touching you at all in the living room?

"A.  Yes.

"Q.  Do you have a memory of him touching you?

"A.  No.

"Q.  And you don't remember him touching you in the living room?

"A.  No.

"[Nieto's trial counsel]:  Objection.  Hearsay.  Move to strike.

"The Court:  Overruled."  (Italics added and some capitalization omitted.)

The prosecutor then continued his direct examination of Doe 2.

> 2.  Analysis

Nieto characterizes his trial counsel's objection and motion to strike as relating to "the pertinent testimony" and faults the trial court for not sustaining the objection and striking Doe 2's "testimony about the [living room] episode" because it "was based on inadmissible hearsay and lacked any foundation in personal knowledge."

We are not convinced by Nieto's argument that his current claim of error was adequately preserved for our appellate review.  Evidence Code section 353, subdivision (a), permits reversal of a judgment because of the erroneous admission of evidence only if an objection to the evidence or a motion to strike it was "timely made and so stated as to make clear the specific ground of the objection or motion."  (Evid. Code, § 353, subd. (a).)  Pursuant to that statute, our Supreme Court " ' "ha[s] consistently held that the

14

'defendant's failure to make a timely and specific objection' on the ground asserted on appeal makes that ground not cognizable." ' " (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20.) " 'When the nature of a question indicates that the evidence sought is inadmissible, there must be an objection to the question; a subsequent motion to strike is not sufficient.' " (*Id.* at p. 21.) "The purpose of this rule 'is to encourage a defendant to bring any errors to the trial court's attention so the court may correct or avoid the errors and provide the defendant with a fair trial.' [Citation.] Thus, an objection will be deemed sufficient so long as it 'fairly apprises the trial court of the issue it is being called upon to decide.' " (*People v. Carrillo* (2004) 119 Cal.App.4th 94, 101.) "Moreover, '[a] motion to strike must be directed with precision to the matter sought to be stricken. [Citation.] A motion to strike out inadmissible evidence may properly be denied where it is general and embraces evidence which is admissible as well as that which is inadmissible.' " (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1414.)

Here, Nieto voiced his hearsay objection to a question and answer offered well after Doe 2 first said that she knew she had been touched because her mom had seen it and told her so. Furthermore, Nieto's motion to strike did not identify specifically the testimony he urged stricken. On appeal, Nieto contends the trial court should have stricken Doe 2's testimony about "the episode." At trial, however, he did not indicate that he wanted the trial court to strike all of Doe 2's testimony about the alleged events in the living room, and such a request cannot be fairly implied from his objection and generic motion to strike. Nieto's objection did not specify any particular statement, and Doe 2's answer immediately preceding the objection contained no hearsay at all.

Simply put, Nieto's objection and motion to strike failed to fairly apprise the trial court about what testimony he believed was objectionable and wanted stricken from the trial record. Under these circumstances, we conclude that Nieto's objection and nonspecific motion to strike did not adequately preserve his current claim for appellate review.

15

C. *Sentence under Section 667.61 Multiple-Victim Enhancement*

Nieto contends the trial court imposed unauthorized terms of 25 years to life for his convictions on counts 1 and 2 because the information did not plead the applicability of the sentence enhancement under section 667.61, subdivision (j)(2) (hereafter section 667.61(j)(2)). Nieto asserts further that the present situation is equivalent to that in *People v. Jimenez* (2019) 35 Cal.App.5th 373 (*Jimenez*), where a different panel of this court concluded "the failure to plead the enhancement under section 667.61(j)(2) precluded sentencing based on that provision." (*Id*. at p. 397.)

The Attorney General urges us to reject the reasoning and holding of *Jimenez* and, instead, follow subsequent opposing decisions from other Courts of Appeal, namely *In re Vaquera* (2019) 39 Cal.App.5th 233, review granted November 26, 2019, S258376 (*Vaquera*), and *People v. Zaldana* (2019) 43 Cal.App.5th 527, review granted March 18, 2020, S259731 (*Zaldana*).

1. Background

The information alleged the applicability of the multiple-victim enhancement to Nieto as follows: "It is further alleged, within the meaning of Penal Code section 667.61[, subdivisions] (b) and (e), as to counts 1 and 2, that the following circumstances apply: multiple victims" (some capitalization omitted). Alongside that enhancement allegation, the information stated the following, "15 to Life [in] State Prison."[10]

The trial court instructed the jurors that if they found Nieto guilty on counts 1 and 2, they had to "decide whether the People have proved the additional allegation that those crimes were committed against more than one victim in this case."

---

[10] As mentioned *ante*, the operative information in this case is a first amended information, filed on August 7, 2018. Neither the complaint (filed in September 2017) nor the initial information (filed in February 2018) had alleged the multiple-victim enhancement.

16

The jury returned the following verdict on the multiple-victim enhancement allegation: "We, the jury, . . . having found the defendant guilty of lewd act upon a child in Count 1 and Count 2, find the allegation that the defendant committed a lewd act upon a child against more than one victim, in violation of Penal Code Section 667.61 found [*sic*] true."

At the sentencing hearing, trial counsel argued against a 50-years-to-life sentence on several grounds. Counsel said that he "d[id] not think it's appropriate or logical to impose two life consequences based on what should be a single life consequence finding." He further asserted that he was "not sure that the life consequence should be a 25 to life consequence. It seems to me that [section] 667.6[1][,subdivision] (b) calls for an enhancement of 15 rather than 25 to life." Finally, counsel urged the court "to exercise its discretion and recognize the conduct in this case was relatively de minimis given the grand scheme of [section] 288 types of cases."

The prosecutor argued that the trial court was required to impose a term of 25 years to life on each count and the only question before the court was whether "the life counts should be concurrent or if the life counts[,] 25 to life should be consecutive."

The trial court found that it was "required to impose sentences of 25 to life as to each victim under the jury's finding of multiple victims under [section] 667.61 subdivision (b), (e) and (j)(2) and essentially the only issue on which [it is] given any discretion is the concurrent versus consecutive sentences." The court further found that "the factors weigh in favor of consecutive sentences" and imposed two consecutive terms of 25 years to life.

2. Relevant Statutory Provisions and Legal Principles

Section 667.61 is known as the " 'one strike' " law; it "provides for enhanced indeterminate terms of either 15 or 25 years to life for those who commit enumerated felony sex offenses in specified circumstances." (*People v. Valdez* (2011) 193

Cal.App.4th 1515, 1521; see also *People v. Mancebo* (2002) 27 Cal.4th 735, 738, 741–742 (*Mancebo*).)

Section 667.61, subdivision (b), provides: "Except as provided in subdivision (a), (j), (*l*), or (m), a person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life."[11] (§ 667.61, subd. (b).) One of the offenses listed in subdivision (c) of section 667.61 is the offense charged in this case, namely "[l]ewd or lascivious act, in violation of subdivision (a) of [s]ection 288."[12] (§ 667.61, subd. (c)(8).)

Section 667.61, subdivision (e), provides in relevant part: "The following circumstances shall apply to the offenses specified in subdivision (c): [¶] . . . [¶] (4) The defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim." (§ 667.61, subd. (e).)

Section 667.61(j)(2) provides: "A person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life." (§ 667.61(j)(2).)

Section 667.61, subdivision (f), provides in part: "If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a), (b), (j), (*l*), or (m) to apply have been pled and proved, that

---

[11] Although section 667.61 was amended twice since the crimes in this case occurred and were charged against Nieto, the amendments are not material to our consideration of Nieto's claim. (See Stats. 2018, ch. 423, § 68; Stats. 2021, ch. 626, § 31.) For simplicity, we cite to the current version of section 667.61.

[12] Section 288, subdivision (a) provides: "Except as provided in subdivision (i), a person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years." (§ 288, subd. (a).)

18

circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a), (b), (j), (*l*), or (m) whichever is greater, rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty or the punishment under another law can be imposed in addition to the punishment provided by this section." (§ 667.61, subd. (f).)

Section 667.61, subdivision (*o*), provides: "The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (*o*).)

" ' "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [Citations.] "A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial." ' [Citation.] This goes for sentence enhancements as well as substantive offenses: A defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' " (*People v. Anderson* (2020) 9 Cal.5th 946, 953 (*Anderson*).)

### 3. Analysis

Nieto relies principally on *Jimenez* to argue that the trial court acted without authorization when it imposed 25-years-to-life terms on counts 1 and 2. In *Jimenez*, the defendant was charged by information with, inter alia, 13 sex crimes against more than one victim under section 667.61, subdivisions (b) and (e).[13] (*Jimenez, supra*, 35 Cal.App.5th at pp. 377–378, 394.) As here, the defendant argued that the prosecution's

---

[13] The relevant counts in *Jimenez* were charged under section 288, subdivisions (a), (b)(1), and (c). (*Jimenez, supra*, 35 Cal.App.5th at pp. 377–378.)

failure to plead section 667.61(j)(2) violated his due process right to notice. (*Id.* at pp. 393–394.) This court agreed, concluding the defendant's right to due process had been violated because "the information only informed Jimenez he could be sentenced to terms of 15 years to life under Penal Code section 667.61, subdivisions (b) and (e) for committing the alleged offenses against multiple victims" and "did not put him on notice that he could be sentenced to terms of 25 years to life under section 667.61(j)(2) for committing those offenses upon multiple victims, at least one of whom was under 14 years of age." (*Id.* at p. 397, italics omitted.) This court also noted the parties' apparent belief pretrial that the defendant's maximum sentencing exposure derived from 15-years-to-life terms and mentioned the potential effect sentencing exposure can have on a defendant's decision to plead guilty or proceed to trial. (*Ibid.*) Ultimately, this court held that given the failure to plead the sentence enhancement under section 667.61(j)(2), sentencing the defendant to 25 years to life based on that provision was precluded. (*Ibid.*) Accordingly, the court reversed the judgment and remanded for resentencing. (*Ibid.*)

Two published decisions from other Courts of Appeal have disagreed with *Jimenez*, and the California Supreme Court has granted review to address the conflict. (*Vaquera*, *supra*, 39 Cal.App.5th at p. 244, review granted; *Zaldana*, *supra*, 43 Cal.App.5th at p. 533, review granted.[14])

---

[14] In *Vaquera*, the California Supreme Court granted review on three questions: "(1) Did the Court of Appeal err by disagreeing with *People v Jimenez* (2019) 35 Cal.App.5th 373 and endorsing as mandatory the sentencing practice prohibited in that case?[;] (2) Is the Court of Appeal's decision incorrect under *People v. Mancebo* (2002) 27 Cal.4th 735?[;] (3) Did the Court of Appeal err by failing to address petitioner's claims as to the issues of waiver and estoppel?" (See California Supreme Court, Issues Pending Before the California Supreme Court in Criminal Cases at p. 8, at <https://www.courts.ca.gov/documents/MAY0622crimpend.pdf> [as of May 10, 2022], archived at: <https://perma.cc/UVJ8-PBT3>.)

In *Vaquera*, the defendant argued his due process rights were violated by the imposition of a 25-year-to-life term under section 667.61(j)(2) when that subdivision was not specifically alleged in the information; rather, only subdivisions (b) and (e)(4) of section 667.61 were alleged as to two counts charged under section 288, subdivision (a). (See *Vaquera*, *supra*, 39 Cal.App.5th at pp. 236, 238, review granted.) The *Vaquera* court concluded that the information need not have alleged section 667.61(j)(2), because the 25-year-to-life exception under that subdivision "was effectively noted in the information by reference to section 667.61, subdivision (b), which specifically references, in its introductory clause, section 667.61, subdivision (j), as an exception to its provisions." (*Id*. at pp. 241–242.) The court also concluded that the defendant had not demonstrated any prejudice because he had not shown he would have prepared or defended his case any differently had the People alleged the enhancement under section 667.61(j)(2). (*Id*. at p. 242.)

Furthermore, the *Vaquera* court distinguished *Mancebo* (*Vaquera*, *supra*, 39 Cal.App.5th at pp. 242–243, review granted) and disagreed with the legal analysis in *Jimenez* (*id*. at p. 244). The *Vaquera* court stated that *Jimenez* had failed to consider the fact that the 25-year-to-life exception under section 667.61(j)(2) "is specifically provided for within section 667.61, subdivision (b)" and did not distinguish its facts from those in *Mancebo*. (*Ibid*.) Additionally, the *Vaquera* court rejected the defendant's argument that "the People could have elected to pursue a prison term of 15 years to life under section 667.61, subdivision (b), rather than a prison term of 25 years to life" (*id*. at p. 244) under section 667.61(j)(2), concluding that, under the wording of section 667.61, subdivision (b) and section 667.61(j)(2), the trial court was required to impose a 25-year-to-life term. (*Id*. at p. 245; see also *id*. at p. 237; *People v. Morales* (2018) 29 Cal.App.5th 471, 484–

In *Zaldana*, the Supreme Court granted review and deferred further action in the matter "pending consideration and disposition of a related issue in *Vaquera on Habeas Corpus*, S258376." (*People v. Zaldana* (2020) 460 P.3d 262.)

21

485 [appellate court accepted the defendant's concession that his 15-year-to-life terms on three lewd act counts (instead of 25-year-to-life terms) amounted to an unauthorized sentence].)

In *Zaldana*, the Court of Appeal followed *Vaquera* and concluded the information filed against the defendant had provided him "adequate notice of the longer possible prison term in" section 667.61(j)(2). (*Zaldana*, *supra*, 43 Cal.App.5th at p. 535, review granted.)

We are not persuaded by the Attorney General that we should reject the conclusion of the panel in *Jimenez* and rely on *Vaquera* and *Zaldana* to deny Nieto relief. We acknowledge the force of the statutory analysis in *Vaquera* and *Zaldana*. However, this court's reasoning and conclusion in *Jimenez* implicitly rejected that the exception stated in section 667.61, subdivision (b), regarding subdivision (j) provides adequate notice of the applicability of section 667.61(j)(2) in all cases.

Furthermore, the *Jimenez* court's reasoning and holding reject the conclusion that under section 667.61(j)(2), a trial court is required to impose a 25-year-to-life term even where defendant was not noticed of the applicability of that enhancement by the prosecution or the court. Instead, *Jimenez* decided that when, as in that case, there has been a failure to provide the defendant adequate notice of the applicability of the 25-years-to-life sentence enhancement under section 667.61(j)(2), a 25-years-to-life term under that provision cannot be imposed based on principles of constitutional due process. (See *Jimenez*, *supra*, 35 Cal.App.5th at p. 397; cf. *Anderson*, *supra*, 9 Cal.5th at p. 957 ["[A]n information that fails to plead the specific numerical subdivision of an enhancement is [not] necessarily inadequate. . . . But the accusatory pleading must adequately inform the defendant as to how the prosecution will seek to exercise its discretion."])

Additionally, we are not convinced that, on these facts, we should decline to follow *Jimenez*. The information here expressly stated that Nieto's sentencing exposure

22

under the multiple-victim enhancement allegation was "15 to Life [in] State Prison," and neither the related jury instruction nor the jury's verdict specifically mentioned section 667.61(j)(2). We have found no indication in the record on appeal that, prior to trial, Nieto was informed by the prosecutor or the trial court that he faced a potential sentence of 25 years to life in prison—let alone the 50 years to life the trial court ultimately imposed.[15] Accordingly, under these circumstances, we conclude that Nieto did not receive fair notice that he was subject to a 25-years-to-life term on counts 1 and 2 (as compared to 15-years-to-life terms) and thus vacate Nieto's 50-years-to-life sentence.[16] We also will remand the matter for resentencing consistent with this opinion.[17] As Nieto has not challenged on appeal the trial court's discretionary decision to impose consecutive terms, we express no opinion on how the trial court should exercise its discretion on this issue at Nieto's resentencing hearing. (See *People v. Lopez* (2022) 76

---

[15] We acknowledge that, after the jury returned its verdicts, the prosecutor asked the trial court to remand Nieto (who had been free on bail), noting that Nieto was "facing 25 to life." In response, Nieto's trial counsel said, "Mr. Nieto has been aware of the [section] 667.61 potentiality since the inception of the case, he was advised of it." However, this comment (which referenced section 667.61 as a whole, rather than subdivision (j)) did not specifically concede Nieto's awareness of the 25-years-to-life enhancement. Further, at Nieto's sentencing, his counsel expressed doubt whether the 25-years-to-life enhancement applied as a matter of law, further calling into doubt whether defense counsel had advised Nieto of it.

[16] Although neither party addresses in its briefing in this court the issue of prejudice, we decide the error was prejudicial. As the very issue here is lack of notice, we reject the implication of the *Vaquera* court (see *Vaquera*, *supra*, 39 Cal.App.5th at p. 242, review granted) that Nieto must point to specific evidence in the record to show he would have made a different decision about whether to go to trial to demonstrate prejudicial error.

[17] Nieto asserts that we need not remand the case to the trial court because we can simply correct his sentence to the "authorized sentence of 15 years to life for each count, resulting in a total prison term of 30 years to life." Nieto's assertion, however, does not specifically state whether the new sentence he urges should include concurrent or consecutive terms. Further, the Attorney General does not address what Nieto's sentence should be in the event we were to vacate his 50-years-to-life sentence. Given the uncertainty of the parties' positions on Nieto's sentence, a remand of the matter for resentencing is the appropriate remedy.

Cal.App.5th 287, 291–292; see also *Zaldana*, *supra*, 43 Cal.App.5th at p. 536, review granted.)

D. *Cruel and Unusual Punishment*

Nieto contends his sentence constituted cruel and unusual punishment in violation of the United States and California Constitutions. Because we are remanding this matter for resentencing, this claim is not yet ripe for our review, and we do not examine it further.

## III. DISPOSITION

The judgment is reversed and the matter is remanded for resentencing consistent with this opinion. Nieto's convictions are affirmed. Following resentencing, the trial court is directed to prepare a new abstract of judgment and to forward it to the Department of Corrections and Rehabilitation.

_____
                        Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Wilson, J.

**H047795**
***People v. Nieto***