# IN THE SUPREME COURT OF CALIFORNIA

LYNN GRANDE,

Plaintiff and Respondent,

v.

EISENHOWER MEDICAL CENTER,

Defendant;

FLEXCARE LLC,

Intervener and Appellant.

EISENHOWER MEDICAL CENTER,

Petitioner,

v.

THE SUPERIOR COURT OF RIVERSIDE COUNTY,

Respondent;

LYNN GRANDE,

Real Party in Interest.

S261247

Fourth Appellate District, Division Two
E068730, E068751

Riverside County Superior Court
RIC1514281

June 30, 2022

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Guerrero concurred.

GRANDE v. EISENHOWER MEDICAL CENTER

S261247

Opinion of the Court by Cantil-Sakauye, C. J.

A staffing agency (FlexCare LLC) arranged for a nurse (Lynn Grande) to work at a hospital (Eisenhower Medical Center). The nurse sued the staffing agency for violating the Labor Code and the Unfair Competition Law. The parties settled and the court entered judgment upon the settlement. The hospital was not a party to that initial lawsuit and the settlement did not name the hospital as a released party.

The nurse then sued the hospital based on the same alleged violations. The hospital argued that, because of the first judgment, claim preclusion foreclosed the nurse's second suit. The Court of Appeal disagreed, criticizing the reasoning of a published opinion that found claim preclusion on similar facts. (*Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1162–1163 (*Grande*), criticizing *Castillo v. Glenair, Inc.* (2018) 23 Cal.App.5th 252, 278–281 (*Castillo*).) We granted review to resolve this tension in the case law.

The core of this dispute concerns privity. Judgments bind not only parties, but also "those persons 'in privity with' parties." (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 951.) Questions about privity typically arise when a litigant attempts to use a judgment against someone who was not party to that judgment. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 826, fn. 9 (*DKN Holdings*).)

This case does not present a typical privity question. Because the nurse was a party to the initial judgment, the

judgment can be used against her whether or not she was in privity with some other party. But for claim preclusion, the affirmative defense asserted by the hospital, that is not enough. Instead, we have frequently explained that claim preclusion can be asserted only by a party in the first action or someone in privity with a party in the first action. In this case, a nonparty (the hospital) argues that *it* is in privity with a party (the staffing agency) to benefit from the claim-preclusive effect of a judgment that undoubtedly binds an opposing party (the nurse).

That argument is not persuasive. We recently explained that privity "requires the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826.) There is no such privity here because of the hospital and staffing agency's different legal interests. Nor can preclusion be based on a claimed indemnification or agency relationship between those litigants. We will thus affirm the judgment of the Court of Appeal.

## I. BACKGROUND

Intervener FlexCare LLC is a temporary staffing agency. Plaintiff Lynn Grande is a nurse. FlexCare assigned Grande to work at defendant Eisenhower Medical Center, which she did for about a week in February 2012. Under the terms of an agreement between the staffing agency (FlexCare) and the hospital (Eisenhower), the staffing agency purportedly "retain[ed] . . . exclusive and total legal responsibility as the employer of Staff," including "the obligation to ensure full compliance with and satisfaction of" wage and hour requirements. The hospital retained discretion to assign shifts.

Nurses were to use the hospital's time and attendance system. The staffing agency agreed to indemnify the hospital for certain obligations concerning this staffing arrangement. The two lawsuits relevant here, described below, relate to that arrangement.

## A. First Suit, Against the Staffing Agency

A person not party to the case now before us filed a putative class action against the staffing agency and others in state court. The nurse who filed the present case (Grande) joined the prior action as a named plaintiff, alleging wage and hour violations during the time she worked at the hospital. Both plaintiffs sought to represent a class that included a broad group of the staffing agency's employees, not merely nurses placed at Eisenhower. The hospital was not named as a defendant in this prior action and did not intervene in it.

The parties to the first suit reached a stipulation and settlement agreement, with the staffing agency to pay no more than $750,000. The trial court approved the agreement and entered judgment. For purposes of the judgment, the court certified a class of " 'all persons who at any time from or after January 30, 2008 through April 8, 2014 were non-exempt nursing employees of [the staffing agency] employed in California.' " Contingent on payment of the amounts due, the court "barred and enjoined" all class members "from prosecuting" certain claims "against the Released Parties." The term "Released Parties" was defined to include the staffing agency and its agents but did not mention the hospital by name. The court further ordered that "the Released Parties" could use records from the case "to support a defense of res judicata, collateral estoppel, release, waiver or other theory of claim

preclusion, issue preclusion or similar defense." By the time of judgment, the hospital had not communicated with the staffing agency regarding the settlement. There is no dispute that the staffing agency paid the amounts owed.

### B. Second Suit, Against the Hospital

After the judgment in the first suit became final, the nurse filed this putative class action against the hospital. The suit is based on alleged wage and hour violations while the nurse worked there. The scope of the (putative) class at issue in this second action differs from the class at issue in the first. Unlike the first suit, which concerned nonexempt employees of the staffing agency placed throughout the state (not just at Eisenhower), this second suit concerns nonexempt employees of the hospital placed by any staffing agency (not just by FlexCare).

The staffing agency (FlexCare) filed a complaint in intervention, seeking declaratory relief. The staffing agency and the hospital argued both that the hospital was entitled to the benefit of the earlier release, and that the first judgment precludes the nurse from bringing this second suit.

The court held a bench trial on the release and preclusion issues. The court found that "the language in the release clause cannot reasonably be construed to extend to claims Plaintiff may have against [the hospital] in this case." The court further concluded that because the hospital "is not in privity with [the staffing agency], as that term is understood for claim preclusion (*res judicata*) purposes, Plaintiff's claim against [the hospital] in this case is not barred by the Final Judgment" in the first action. The court reasoned that "if Plaintiff were attempting to hold [the hospital] derivatively liable for [the staffing agency's] violation of the Labor Code, one might be able to argue that claim

preclusion should apply to bar this suit." But the court "found no support for the proposition that joint employer liability is a derivative claim"; on the contrary, "case law supports the view that joint employer liability is joint and several, with each employer having a separate and independent duty to comply with the Labor Code."

The staffing agency and the hospital sought review in the Court of Appeal. The trial court entered judgment on the staffing agency's complaint in intervention, from which the staffing agency appealed. At the hospital's request, the trial court issued an interlocutory order certifying that the litigation between the nurse and the hospital presented an issue warranting immediate review. (See Code Civ. Proc., § 166.1; *McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 248.) The hospital petitioned for writ of mandate. The Court of Appeal issued an order to show cause and consolidated the matter with the staffing agency's appeal.

A divided panel of the Court of Appeal affirmed the trial court's judgment against the staffing agency and denied the hospital's petition for writ of mandate. (*Grande, supra*, 44 Cal.App.5th at p. 1168.) The court first concluded that preclusion was inappropriate because the hospital was not in privity with the staffing agency. (*Id.*, at pp. 1157–1163.) In doing so, the court criticized the privity analysis in the *Castillo* opinion. (*Grande*, at p. 1162.) The court also found no error in the trial court's conclusion that the settlement did not release claims against the hospital. (*Grande*, at pp. 1163–1167.)

Presiding Justice Ramirez dissented. He "would follow *Castillo*, as a matter of stare decisis," concluding that it was not "so plainly wrong as to justify creating a split of authority."

(*Grande*, *supra*, 44 Cal.App.5th at p. 1168 (dis. opn. of Ramirez, P. J.).)

We granted review. Below, we first briefly confirm that the trial court's interpretation of the release was supported by substantial evidence. That interpretation may well be dispositive of the preclusion question; there is a strong argument — not meaningfully addressed in *Castillo*, the appellate opinion below, or the briefing here — that an agreement giving rise to a judgment should control the preclusive effect of that judgment. Regardless, even under ordinary principles of claim preclusion, the hospital and staffing agency have not demonstrated that the Court of Appeal erred.

## II. SCOPE OF RELEASE AND RELATIONSHIP TO PRECLUSION

### A. Scope of Release

We begin with the text of the agreement giving rise to the first judgment. In most pertinent part, it released "FlexCare, LLC, . . . [several individuals], and all present and former subsidiaries, affiliates, divisions, related or affiliated companies, parent companies, franchisors, franchisees, shareholders, and attorneys, and their respective successors and predecessors in interest, all of their respective officers, directors, employees, administrators, fiduciaries, trustees and *agents*, and each of their past, present and future officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and their counsel of record." (Italics added.) The release does not name the hospital or specify a group of clients of the staffing agency, even though the underlying complaint mentions the facilities at which the plaintiff nurses

worked.  Nor, viewed in context of the list of released parties, is the hospital unambiguously an "agent[]" within the meaning of the agreement, notwithstanding the hospital's participation in the nurse's employment.

The trial court resolved this ambiguity following a bench trial, relying at least in part on evidence extrinsic to the agreement.  For example, the court emphasized "[t]he facts surrounding" the first action, identifying testimony that "if claims against [the hospital] were intended to be waived or released, Plaintiff would have named [the hospital] and pursued discovery against it, and obtained money from it in a settlement — none of which occurred."  The trial court's fact-specific determination — construing this particular release, based on the evidence adduced at this particular trial — is supported by substantial evidence.  We affirm on that basis.

Our decision on this issue is thus fact- and case-specific. We note, however, that the broader notion that a client is an "agent" of a staffing agency is not free from doubt.  We have described "the right of control" as "the essential characteristic" of an agency relationship.  (*Edwards v. Freeman* (1949) 34 Cal.2d 589, 592.)  Accordingly, while some courts have relied on the presence of a joint employment relationship as a means of establishing agency (see, e.g., *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782), it is not self-evident that interdependence between a client and staffing agency reflects that right of control, nor that two entities' joint employment of and control over the same employee entails control over each other.  We do not resolve these issues, but courts confronted with similar questions in the future should consider them closely, bearing in mind the facts of each case.  And, of course, future litigants can

specify that their releases extend to staffing agency clients — if that result is intended.

## B. Relationship Between Release and Preclusion

There is a substantial argument that our conclusion regarding the scope of the release should also resolve the preclusion question. "The basically contractual nature of consent judgments has led to general agreement that preclusive effects should be measured by the intent of the parties." (18A Wright et al., Fed. Practice and Procedure (3d. ed. 2017) Jurisdiction and Related Matters, § 4443, pp. 254–255 (hereafter FPP).) One might reasonably ask why, if the hospital is not entitled to the benefit of the release, the hospital should nevertheless be entitled to assert claim preclusion because of the judgment entered upon that release. (*Wojciechowski v. Kohlberg Ventures, LLC* (9th Cir. 2019) 923 F.3d 685, 689–690; *U.S. ex rel. May v. Purdue Pharma L.P.* (4th Cir. 2013) 737 F.3d 908, 913; *Boguslavsky v. South Richmond Securities, Inc.* (2d Cir. 2000) 225 F.3d 127, 130; *Keith v. Aldridge* (4th Cir. 1990) 900 F.2d 736, 740–741; *Bandai America Inc. v. Bally Midway Mfg. Co.* (3d Cir. 1985) 775 F.2d 70, 74–75; cf. *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91–92; but see *Russell v. SunAmerica Securities, Inc.* (5th Cir. 1992) 962 F.2d 1169, 1173, fn. 1; FPP, *supra*, § 4443, p. 271.)

We can decide this case without resolving whether the scope of the release controls the preclusive effect of the judgment. If the release is controlling, then based on our conclusion above, the judgment does not preclude the nurse's claim against the hospital. If the release is not controlling, the judgment still does not preclude the nurse's claim against the

hospital, based on the ordinary principles of preclusion to which we now turn.

## III. OVERVIEW OF PRECLUSION

Preclusion comes in two main forms: claim preclusion and issue preclusion. (See *Samara v. Matar* (2018) 5 Cal.5th 322, 326 & fn. 1 (*Samara*).) As the names suggest, claim preclusion prevents relitigation of entire claims (or "causes of action") (*id.*, at p. 326), while issue preclusion prevents relitigation of specific issues (*id.*, at p. 327). Like many courts, we previously used the terms "res judicata" and "collateral estoppel" when discussing claim and issue preclusion, respectively. (*Samara*, *supra*, 5 Cal.5th at p. 326; see also *id.*, at p. 326, fn. 1. [also noting our prior use of " ' "res judicata" as an umbrella term' capable of referring to claim preclusion, issue preclusion, or both"].)

Claim and issue preclusion have different requirements. We have described claim preclusion as applying "only when 'a second suit involves (1) the same cause of action (2) *between the same parties [or their privies]* (3) after a final judgment on the merits in the first suit.' " (*Samara*, *supra*, 5 Cal.5th at p. 327, italics added.) Issue preclusion, by contrast, "applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) *asserted against one who was a party in the first suit or one in privity with that party*.' " (*Ibid.*, italics added.)

Privity is thus relevant under both doctrines, but with one significant difference. "The loose term 'privity' refers to some relationship or connection with the party that makes it proper to hold 'privies' bound with the actual parties." (7 Witkin, Cal. Procedure (5th ed. 2008) Judgments, § 456, p. 1113; see also pt. IV.A., *post*.) For both claim and issue preclusion, a judgment

can be used *against* only a party to that judgment or someone in privity with a party — in other words, against only a person or entity that is bound by the judgment. (*Samara*, *supra*, 5 Cal.5th at p. 327.) The doctrines diverge, however, concerning *by whom* a judgment can be used. Only claim preclusion contains a " 'between the same parties [or their privies]' " inquiry, which restricts the set of litigants who can benefit from a prior judgment to those who could have had the judgment used against them. (*Ibid.*; but see pt. IV.C., *post*.)

This between-the-same-parties-or-privies formulation reflects claim preclusion's longstanding mutuality requirement. (See *DKN Holdings*, *supra*, 61 Cal.4th at p. 827, fn. 10.) "For many years, most courts followed the general rule that the favorable preclusion effects of a judgment were available only to a person who would have been bound by any unfavorable preclusion effects. This rule, known as the rule of mutuality, established a pleasing symmetry — a judgment was binding only on parties and persons in privity with them, and a judgment could be invoked only by parties and their privies." (FPP, *supra*, § 4463, pp. 666–667; cf. *Bernhard v. Bank of America* (1942) 19 Cal.2d 807, 811 (*Bernhard*) ["The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him"].) In short, litigants "could only take advantage of an earlier judgment if that judgment would have bound *them*, had it been decided differently." (*DKN Holdings*, at p. 827, fn. 10.) In *Bernhard*, "we repudiated the mutuality rule for issue preclusion" (*ibid.*) — but not for claim preclusion. Claim preclusion can prevent reassertion of a claim without regard to whether a plaintiff won or lost in an initial action. (See *Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 973

[describing merger and bar]; see also *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896–897; Rest.2d Judgments (1982) § 17, p. 148.) Allowing nonmutual claim preclusion would thus exert pressure akin to a mandatory joinder rule. If claims against nonparties would be extinguished by a judgment in an initial action — regardless of who wins that initial action — then a plaintiff would be required to either join the nonparties in the initial action or lose its claims against them.

## IV. THE HOSPITAL WAS NOT IN PRIVITY WITH THE STAFFING AGENCY

With this context regarding the same-parties-or-privies requirement in mind, the hospital stands in privity with the staffing agency only if circumstances would permit binding the hospital to an unfavorable judgment against the staffing agency in the first action. (See *DKN Holdings*, *supra*, 61 Cal.4th at p. 827, fn. 10; see also *id.*, at p. 826.) In other words, "privity" is not merely a term that describes a close relationship between two entities; it implies that a judgment against one could have been used against the other, even though that entity was not a party to the judgment. There is no such privity on the facts of this case because the staffing agency did not adequately represent the hospital's interests in the first action.[1]

The term privity is sometimes used more broadly, to convey that nonparties may take advantage even of judgments that could not bind them. There is a fair argument that such

___

[1] Our decision here concerns only whether the hospital could be bound as a privy under our state-law privity inquiry. We do not address whether a nonparty asserting claim preclusion as a privy must further demonstrate that it would have been constitutional to bind that nonparty to a loss. (*Martin v. Wilks* (1989) 490 U.S. 755, 761–762 [discussing due process].)

preclusion should be instead described as nonmutual claim preclusion.  (See pt. IV.C., *post*.)  But as we will discuss, no matter the label, such preclusion is inappropriate in this case.

## A. General Principles

As mentioned, "[t]he loose term 'privity' refers to some relationship or connection with the party that makes it proper to hold 'privies' bound with the actual parties."  (7 Witkin, Cal. Procedure, *supra*, § 456, p. 1113; cf. *Taylor v. Sturgell* (2008) 553 U.S. 880, 894, fn. 8.)

The circumstances recognized as creating privity have evolved over time.  Our older decisions often define privity in terms of a nonparty's acquisition of an interest in the subject matter of litigation.  *Bernhard*, for example, described "[a] privy" as "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (*Bernhard*, *supra*, 19 Cal.2d at p. 811.) Other decisions and a statutory provision are to similar effect. (See Code Civ. Proc., § 1908, subd. (a)(2); see also, e.g., *Holt Mfg. Co. v. Collins* (1908) 154 Cal. 265, 273–274; *Flandreau v. Downey* (1863) 23 Cal. 354, 357.)  More recently, privity has been described as "such an identification in interest of one person with another as to represent the same legal rights" or "a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently

close' so as to justify" preclusion. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 (*Clemmer*).)[2]

Our latest decision to address the concept described privity as "requir[ing] the sharing of 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826.) We apply that inquiry below.

## B. The Hospital Would Not Have Been Bound by an Adverse Judgment in the Initial Action

As the litigants asserting preclusion, the hospital and staffing agency bear the burden of establishing that they were in privity in the first action. (*Vella v. Hudgins* (1977) 20 Cal.3d 251, 257; cf. *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.) As mentioned, to do so here, they must establish that they shared " 'an identity or community of interest,' with 'adequate representation' of that interest in the first suit, and circumstances such that the nonparty 'should reasonably have expected to be bound' by the first suit." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826.) Our recent decision in *DKN Holdings* illustrates this inquiry.

In *DKN Holdings*, a litigant purported to be in privity with a party to an earlier judgment to assert claim preclusion based

---

[2]     It may sometimes be appropriate to bind a nonparty to a loss, without allowing that nonparty to benefit from a win. (See, e.g., FPP, *supra*, § 4451, pp. 366–367 [discussing nonparties that secretly control litigation]; *Dillard v. McKnight* (1949) 34 Cal.2d 209, 216 [suggesting such nonparties should not be termed "privies"].)

on that judgment. (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 825–826 & fn. 19.) A landlord had prevailed on a claim against one of three jointly and severally liable lessees. (*Id.*, at pp. 818–819.) The landlord sued the other two lessees in a separate action. (*Id.*, at p. 819.) A defendant in the second action argued that the landlord's "rights under the lease had been adjudicated" in the first action, precluding the second suit. (*Ibid.*)

We disagreed. After setting out the privity inquiry quoted above, we explained, "A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's ' " 'virtual representative' " ' in the first action. [Citation.] Joint and several liability alone does not create such a closely aligned interest between co-obligors. The liability of each joint and several obligor is separate and independent, not vicarious or derivative." (*DKN Holdings*, *supra*, 61 Cal.4th at p. 826.) We distinguished Court of Appeal decisions addressing situations in which "a defendant's liability [was] *entirely deriv*[*ative*] [of] that of a party in an earlier action." (*Id.*, at pp. 827–828, italics added.) "The concepts of joint and several liability and derivative liability," we explained, "are not coextensive." (*Id.*, at p. 828.) Instead, "[e]ach joint and several obligor is separately responsible for breach of the contract; the basis of each one's liability is independent, although all have contributed to the same loss." (*Ibid.*)[3]

*DKN Holdings* makes clear that privity does not exist merely because two entities are allegedly liable for the same

---

[3] Although we held that virtual representation was necessary to sustain the theory of privity at issue, we had no occasion to consider precisely what sort of representation would have justified preclusion.

wrong to the same plaintiff. Likewise, then, privity does not exist merely because two entities share an interest in establishing that no wrong occurred. Accordingly, whether the staffing agency had an interest in showing that neither it nor the hospital was liable to the nurse cannot end the inquiry.

Here, even if, as a factual matter, the hospital and staffing agency worked together to satisfy their payment obligations, that does not mean their legal interests were not distinct. Although the staffing agency describes this second case as concerning "the exact same wage and hour violations" that were at issue in the first action, at oral argument the staffing agency declined to concede that it would need to indemnify the hospital for all liability arising from the conduct at issue in this second action. The implication is that at least some of the alleged violations could, in the staffing agency's view, result in liability for the hospital but not for the staffing agency. This suggests a conflict of incentives rather than adequate representation. Likewise, the hospital may have had an interest in shifting fault to the staffing agency had it been party to that action — and the staffing agency, quite obviously, would not have represented that interest. (Cf. *Clemmer*, *supra*, 22 Cal.3d at p. 874 ["plaintiffs' interests in litigating the issue of willfulness differed from those of Dr. Lovelace and were therefore not adequately represented by him in his prior criminal trial"].)

The hospital and staffing agency nevertheless contend that their position is supported by the Court of Appeal's decision in *Castillo*. *Castillo* concerned a temporary staffing agency (GCA), the agency's employees, and its client (Glenair). (See *Castillo*, *supra*, 23 Cal.App.5th at p. 266.) A lawsuit was filed against the staffing agency on behalf of a class that included employees Andrew and David Castillo. (*Id.*, at pp. 266–267.)

The action resulted in a court-approved settlement, which included a release. (*Id.*, at pp. 267–268.) The Castillos separately sued the staffing agency's client Glenair, at which they had been placed to work. (*Id.*, at p. 266.) The Court of Appeal concluded, in portions of its opinion not essential to our discussion here, that Glenair was entitled to summary judgment on the theory that the release in the class action extinguished the Castillos' claims against Glenair. (See *id.*, at pp. 281–282.)

The court further held that client-employer Glenair was in privity with staffing agency GCA for purposes of claim preclusion. (*Castillo*, *supra*, 23 Cal.App.5th at pp. 278–281.) The court reasoned that "privity, ' "as used in the context of res judicata or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship *to the subject matter of the litigation*." ' " (*Castillo*, at p. 277.) Applying that understanding, the court thought it was "clear" that the client-employer and staffing agency were in privity for purposes of the claim involved. (*Id.*, at p. 279.) "The subject matter of this litigation is the same as the subject matter of the [other] litigation — namely, both cases involve the same wage and hour causes of action arising from the same work performed by the same GCA employees (the Castillos) at GCA's client company Glenair. Based on the undisputed facts, it is apparent Glenair and GCA share the same relationship to the Castillos' claims here. Both Glenair and GCA were involved in and responsible for payment of the Castillos' wages. Glenair was authorized by GCA and responsible for recording, reviewing and transmitting the Castillos' time records to GCA. GCA paid the Castillos based on those time records. And, by virtue of the [other] settlement, the Castillos were compensated for any errors made in the payment of their wages. Thus, with respect

to the Castillos' wage and hour causes of action, the interests of Glenair and GCA are so intertwined as to put Glenair and GCA in the same relationship to the litigation here. Accordingly, we conclude they are in privity for purposes of the instant litigation." (*Id.*, at pp. 279–280.)

The court also remarked on our decision in *DKN Holdings*. "This case is distinguishable" from *DKN Holdings*, the *Castillo* court reasoned, "because, assuming Glenair and GCA are jointly and severally liable, our finding of privity does not rely on any such relationship. Rather, as explained above, Glenair and GCA are in privity for present purposes based both on their interdependent relationship with respect to payment of the Castillos' wages as well as on the fact that this litigation revolves around alleged errors in the payment of the Castillos' wages. *DKN Holdings* does not preclude our conclusion here." (*Castillo*, *supra*, 23 Cal.App.5th at p. 280; see also *id.*, at p. 287.) In doing so, *Castillo* appears to have focused on the factual circumstances surrounding defendants' compliance with wage and hour obligations, rather than the nature of defendants' legal obligations to the plaintiffs. (But see *DKN Holdings*, *supra*, 61 Cal.4th at pp. 822–823.)

Building on *Castillo*, the hospital and the staffing agency here contend that they are in privity because of their similar relationship to the "subject matter" of the initial action. None of their briefing on this point explores the fact that the initial suit concerned a different class of plaintiffs than this second suit — and thus, at least arguably, concerned a rather different "subject matter." Recall, too, that the first suit concerned nonexempt employees of the staffing agency placed throughout California. The hospital and staffing agency's reliance on their similar relationship to the "subject matter" of the initial action

seems to imply that *all* California clients of the staffing agency were in privity in the first action — effectively requiring the nurse to join them all as defendants and threatening to bind them to a judgment based on little more than their contractual relationship with the agency. This concept of privity would stretch remarkably broadly.

To be sure, *Castillo* is correct that the privity inquiry focuses on the relationship between supposed privies in the context of the litigation — not a static analysis of the relationship between them. Two litigants may be privies in some circumstances yet strangers in others. But even viewed in the context of the initial litigation, the staffing agency and hospital's divergent interests prevent a finding of privity.[4]

## C. The Hospital Is Not Otherwise Entitled to Benefit from Claim Preclusion

The briefing reflects two other theories of privity suggesting that, in the hospital's view, the hospital is entitled to benefit from the claim preclusive effect of the first judgment even if it could not have been bound by that judgment. Although we recognize that the term privity is sometimes used in this manner, such preclusion might more appropriately be termed nonmutual claim preclusion. A doctrine of privity that allows a nonparty to benefit from a judgment, but not to be bound by a judgment, is in effect an exception to the mutuality requirement. (FPP, *supra*, § 4463, p. 667.) "[F]indings of

---

[4] We do not address whether the nurse's suit against the hospital concerns the same cause of action as her suit against the staffing agency, nor whether considerations unique to the class action context would alone authorize splitting such a cause of action across multiple suits.

privity" made under such a doctrine "may cloud reasoning as later courts confront real privity questions[] and may prevent the present court from considering and articulating the factors that make it appropriate to allow nonmutual claim preclusion." (*Id.,* § 4464.1, p. 705; cf. *DKN Holdings*, *supra*, 61 Cal.4th at p. 824 [imprecise terminology can impede careful preclusion analysis].) For purposes of this case, however, the terminology is not critical; the theories, however named, lack merit.[5]

### 1. *Contractual Indemnification Provision*

The hospital contends that claim preclusion is appropriate because the staffing agency agreed to indemnify it. We can assume for purposes of this argument that the agreement covers all the hospital's potential liability in this action.

We acknowledge the position that an indemnitee should, in at least some circumstances, be able to assert claim preclusion based on a judgment in favor of an indemnitor. (FPP, *supra*, § 4463, p. 671; cf. *Bradley v. Rosenthal* (1908) 154 Cal. 420, 425.) If a plaintiff were to lose to an indemnitor and then prevail against an indemnitee, a question would arise regarding the right to indemnification. "To allow the right of indemnification would be to destroy the victory won by the indemnitor in the first action. To deny the right of indemnification would be to destroy the indemnitee's right by the result of an action in which he took no part." (FPP, *supra*, § 4463, p. 673.) One might afford the benefit of claim preclusion

---

[5]    Although the hospital appears to argue for nonmutual preclusion, we express no view concerning whether the theories discussed below could support the use of a judgment against a nonparty. (See fn. 1, *ante*.) We conclude only that the theories lack force on the facts of this case.

to the nonparty indemnitee based on a view that it is "better to preclude the [plaintiff], who has already had one opportunity to litigate, and who often could have joined both adversaries in the first action." (*Ibid.*; cf. *Lamb v. Wahlenmaier* (1904) 144 Cal. 91, 93–97 [surety entitled to benefit of judgment in favor of principal, lest surety be held liable to plaintiff but unable to recover from principal].)

Regardless, this argument fails at least because the hospital has not established that the staffing agency was sued in its capacity as indemnitor. (Cf. *Grande*, *supra*, 44 Cal.App.5th at p. 1161 ["[the nurse] sued [the staffing agency] based on labor law violations [the staffing agency] committed on its own. She didn't allege it was derivatively or vicariously liable as [the hospital's] indemnitor."].) When a contractual indemnitor is sued based on its own conduct, it is possible to simultaneously allow (i) the plaintiff to then sue the indemnitee for the indemnitee's conduct, (ii) the indemnitee to obtain indemnification, and (iii) the indemnitor to retain any initial (own-conduct-related) victory. That possibility renders this argument for preclusion unpersuasive. (See *F.T.C. v. Garvey* (9th Cir. 2004) 383 F.3d 891, 898 ["If the indemnitor is sued for its own actions and is not sued as an indemnitor for the acts of another, the rationale favoring preclusion no longer holds"].)[6]

---

[6] The staffing agency and the hospital do not appear to press, and in any event have not adequately briefed, any argument that preclusion should arise from a duty to indemnify imposed on the staffing agency by operation of law.

### 2. *Derivative Liability*

In *DKN Holdings*, we identified Court of Appeal decisions indicating that "[w]hen a defendant's liability is *entirely derived* from that of a party in an earlier action, claim preclusion bars the second action because the second defendant stands in privity with the earlier one." (*DKN Holdings*, *supra*, 61 Cal.4th at pp. 827–828, italics added.) The hospital and staffing agency argue that this case concerns such derivative liability and, at least implicitly, they suggest that our case law should or does include the "entirely deriv[ative]" doctrine.

Here, too, *DKN Holdings* provides important context. Our decision in that case makes clear that liability cannot be "entirely deriv[ative]" (*DKN Holdings*, *supra*, 61 Cal.4th at p. 827) merely because, as a matter of factual causation, the alleged liability of two defendants is related. Joint and several obligors on a contract can extinguish each other's liability by paying a shared debt, for example, but it would be odd to treat their relationship as creating privity merely because one obligor could discharge the debt of the other. (*Id.* at p. 825.) The nature of the duty at issue matters. Put somewhat differently, a joint and several obligor may no longer be liable if a co-obligor has already satisfied the obligation at issue, but that does not mean the obligor's liability is or was "derivative" of its co-obligor's.

With this context in mind, the hospital and staffing agency's arguments fail to persuade. The staffing agency contends that the hospital's liability "is necessarily entirely derivative because [the staffing agency] was responsible for paying [the nurse]" based on a private agreement between the agency and the hospital. But at issue here is the hospital's independent duty to comply with the Labor Code, and the

21

staffing agency's alleged failure to make full payment did not give rise to that duty.[7] It may be possible for the parties to satisfy their statutory duties by contract, but the duties exist independent of those efforts. The hospital relatedly urges that it is "sufficient to show that the two companies' alleged liability is 'derivative' of one another" to point out that "[the nurse's] nine-day assignment at [the hospital], and [the hospital's] time records, provision of meal and rest periods, and day-to-day control of [the nurse's] work formed part of the basis of her wage-hour claims." As discussed, *DKN Holdings* counsels that this factual overlap between the claims does not establish derivative liability in the relevant sense.

For these reasons, the hospital and staffing agency have not demonstrated that the Court of Appeal erred in rejecting their claim preclusion argument. We do not decide whether preclusion would have been appropriate on any other ground.

---

[7] The Court of Appeal held that joint employers are each independently liable for their own conduct. (*Grande*, *supra*, 44 Cal.App.5th at p. 1160.) We decline to reach that subsidiary conclusion; we express no opinion on the nature of liability under the Labor Code, nor on the significance, if any, of recent legislative activity in this area. (See Lab. Code, § 2810.3.)

## V.  DISPOSITION

We affirm the judgment of the Court of Appeal and disapprove *Castillo v. Glenair, Inc.*, *supra*, 23 Cal.App.5th 252 to the extent it is inconsistent with this opinion.


**CANTIL-SAKAUYE, C. J.**


**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**GUERRERO, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Grande v. Eisenhower Medical Center

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 44 Cal.App.5th 1147
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S261247
**Date Filed:**  June 30, 2022

---

**Court:**  Superior
**County:**  Riverside
**Judge:**  Sharon J. Waters

---

**Counsel:**

Downey Brand, Cassandra M. Ferrannini, Bradley C. Carroll and Alexandra K. LaFountain for Intervener and Appellant.

Procopio, Cory, Hargreaves & Savitch, Kendra J. Hall and Robert G. Marasco for Sharp Memorial Hospital as Amicus Curiae on behalf of Intervener and Appellant and Defendant and Petitioner.

The Dion-Kindem Law Firm, Peter R. Dion-Kindem; The Blanchard Law Group and Lonnie C. Blanchard III for Plaintiff and Respondent and for Real Party in Interest.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons, Ruben D. Escalante, Karin Dougan Vogel and John D. Ellis for Defendant and for Petitioner.

Atkinson, Andelson, Loya, Ruud & Romo, Susan M. Steward; and Brittany Sakata for American Staffing Association as Amicus Curiae on behalf of Defendant and Petitioner.

Seyfarth Shaw, Jeffrey A. Berman and Kiran Aftab Seldon for California Hospital Association as Amicus Curiae on behalf of Defendant and Petitioner.

No appearance for Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cassandra M. Ferrannini
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
(916) 444-1000

Richard J. Simmons
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43d Floor
Los Angeles, CA 90071
(213) 620-1780

Peter R. Dion-Kindem
The Dion-Kindem Law Firm
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
(818) 883-4900